# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARCUS DEMON HILL,

Defendant-Appellant.

UNPUBLISHED
November 20, 2014

No. 317294
Ingham Circuit Court
LC No. 12-000695-FC

Before: OWENS, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree murder, MCL 750.316; torture, MCL 750.85; and first-degree child abuse, MCL 750.136b(2). Defendant was sentenced to life imprisonment without the possibility of parole for first-degree murder, 285 to 600 months' imprisonment for torture, and 120 to 180 months' imprisonment for first-degree child abuse. We affirm.

On April 30, 2012, Mercedes Kemp brought her two-year old son, BK, in an unresponsive state, to the hospital. He exhibited no vital signs, had a multitude of external bruises, and was unresponsive to attempts to resuscitate him. An autopsy revealed internal injuries including bleeding into the lungs and a liver broken into two or three pieces as the result of a forceful blow to the abdomen. It was determined that BK died as a result of multiple blunt-force injuries inflicted upon him and the child's death was classified a homicide. The prosecution's theory of the case was that defendant and Kemp,[1] together isolated themselves and the child from friends, family, law enforcement, and others, and engaged in an escalating pattern of beatings and other excessive physical discipline out of frustrations over efforts to toilet train the child.

## I. CONFRONTATION CLAUSE

---

[1] Kemp was separately tried, and convicted of second-degree murder, torture, and first-degree child abuse, and received concurrent prison terms of 25 to 50 years for the murder conviction, 15 to 30 years for the torture conviction, and seven years and 11 months to 15 years for the child-abuse conviction.

-1-

Dr. Sbalchiero, an emergency room doctor, testified (primarily by reading from notes she wrote on the child's medical chart) that while medical personnel tried unsuccessfully to resuscitate the child, Kemp told her that she, Kemp, had not been home the previous night and that she returned to her apartment after the child had been in the care of her boyfriend [defendant] to find the child in the condition he was presenting in. Dr. Sbalchiero further testified that when questioned, Kemp admitted to regular physical abuse of the child by her boyfriend. Defendant argues that the admission of this information through the emergency room doctor and her chart violated his right to confrontation.

We review a trial court's evidentiary rulings for an abuse of discretion, *People v Watson*, 245 Mich App 572, 575; 629 NW2d 411 (2001), which occurs when a court "chooses an outcome that is outside the range of reasonable and principled outcomes," *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007). Whether the admission of evidence violates a defendant's right to confrontation is a question of law reviewed de novo. *People v Dinardo*, 290 Mich App 280, 287; 801 NW2d 73 (2010).

The Sixth Amendment to the United States Constitution and Article I, § 20 of the Michigan Constitution provide that a criminal defendant has the right to "be confronted with the witnesses against him" at trial. *People v Fackelman*, 489 Mich 515, 524-525; 802 NW2d 552 (2011). "Witnesses" are "those who 'bear testimony,' " and " '[t]estimony,' " is typically " '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " *Crawford v Washington*, 541 US 36, 51; 124 S Ct 1354; 158 L Ed 2d 177 (2004) (citations omitted).

As plaintiff points out, the "Confrontation 'Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.' " *People v McPherson*, 263 Mich App 124, 133; 687 NW2d 370 (2004), quoting *Crawford*, 541 US at 59 n 9. The first portion of the statements challenged here was not being offered to prove the truth of the matter asserted, i.e., that Kemp was not home when the fatal injuries were inflicted. The prosecutor argued in closing that the statement was a lie that should be used as evidence of Kemp's consciousness of guilt, as the prosecutor's theory was that defendant and Kemp committed the murder together. The court thus did not abuse its discretion in admitting this portion of the statement.

As to the second portion of the challenged statement, that defendant regularly physically abused the child, that portion could arguably have been offered to prove the truth of the matter asserted. However, even absent this statement, the jury could have found that defendant abused the child on the date of his death, given the evidence that he was with the child at or around the time of his death. The jury could also have found defendant guilty of the charged crime as an aider and abettor, given that the prosecutor made clear that his theory of the case was that Kemp was responsible for the death of the child and that defendant was also responsible, as both a principal *and* as an aider and abettor. Thus, to the extent that introduction of this portion of the statement might possibly have been minimally violative of the Confrontation Clause, it would not have prejudiced defendant in any manner that would operate as a ground for a new trial. See, *People v Pickens*, 446 Mich 298, 313; 521 NW2d 797 (1994).

## II. EXCITED UTTERANCE

The victim's three-year-old sister, TK, was placed in foster care following her brother's death. TK's foster mother testified that eight days after the murder, her granddaughter claimed that TK scratched her while the two were playing. The foster mother testified that she took TK aside and told her "that nobody hurts anybody in this home and that she would never be hurt by anybody in this home." The foster mother testified that TK began to cry and said, "A bad man hurt my brother." The foster mother testified that she asked TK "who that person was," and that TK said "Marcus."

Dr. James Henry, who was qualified as an expert in "child trauma and assessment," examined TK ten days after the death. He testified that she was "extremely traumatized," and diagnosed TK with Posttraumatic stress disorder (PTSD). He believed that she remained under stress caused by the murder and recommended that she not be interviewed regarding the details of her brother's murder. Dr. Henry testified that a spontaneous statement made by a child can be the result of a "trigger," which is "something that happens, something you smell, something you might see, something might touch you in some way that the brain suddenly goes back to the event."

The trial court admitted TK's statement made to her foster mother as an excited utterance. It found that the murder was a startling event and that, despite the eight-day delay between that event and the statement, TK made the statement while under the excitement of that event. It relied in part on Henry's testimony regarding "triggers," finding that TK perceived that she was going to be disciplined, which caused her to be under the stress of her brother's death. Additionally, regarding the fact that TK identified defendant as the "bad man" only after her foster mother questioned her, the trial court stated, "One question alone does not defeat an excited utterance."

Defendant argues that the trial court erred in admitting TK's statement as an excited utterance. Under MRE 803(2), an "excited utterance," is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition," and is admissible although it is hearsay. Two requirements must be met for a statement to qualify as an excited utterance. "First, there must be a startling event, and, second, the resulting statement of the declarant must be made while under the excitement caused by that event." *People v Straight*, 430 Mich 418, 424; 424 NW2d 257 (1988). Where, as here, the relevancy of evidence depends on the fulfillment of a condition of fact, under MRE 104(b), TK's statement was admissible if the trial court found that there was "evidence sufficient to support a finding" that she made her statement while under the excitement of her brother's death.[2]

---

[2] Our Supreme Court has suggested that the proper inquiry is whether a reasonable jury could find the conditional fact by a preponderance of the evidence. *People v VanderVliet*, 444 Mich 52, 68 n 20; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).

Defendant first takes issue with the eight day delay between the murder and TK's statement. However, caselaw indicates that when young children experience an event that causes severe trauma, they may remain under the excitement of that event for several days thereafter. *People v Soles*, 143 Mich App 433, 438; 372 NW2d 588 (1985) (six-year-old with five day delay); *People v Draper*, 150 Mich App 481, 486; 389 NW2d 89 (1986) (three-year-old with seven day delay). We conclude that the trial court did not abuse its discretion in determining that there was evidence sufficient to support a finding that TK remained under the excitement of her brother's death eight days later. Her brother's death was undeniably a startling event. Although there was no direct evidence that TK witnessed the fatal beating, it was undisputed that she was in the apartment at the time and that she accompanied her mother while Kemp transported the victim's lifeless body to the hospital. TK's statement itself, that defendant hurt her brother, suggests that she witnessed the beating and that she remained under the excitement of it.[3] In addition, Dr. Henry, who diagnosed TK with PTSD, testified that the threat of being disciplined by her foster mother could have triggered a stress reaction stemming from the murder, even after eight days.

Defendant also argues that TK's identification of defendant as the "bad man" was not an excited utterance because it was made only after she was questioned by her foster mother. While the fact that a statement was given as an answer to a question may indicate that it " 'was the result of reflective thought,' " it is " 'not justification for automatic exclusion.' " *Straight*, 430 Mich at 426 n 6, quoting McCormick, Evidence (3d ed), § 297, p 857. See also *People v Houghteling*, 183 Mich App 805, 808; 455 NW2d 440 (1990) (trial court did not abuse its discretion in holding that statements of a child victim of a sexual assault were excited utterances even though they were made only after her mother questioned her). In the case at hand, the foster mother asked one question in a non-coercive manner. The form of the question did not suggest an answer. In addition, there is no indication that TK paused after being asked the question or contrived an answer after reflective thought.

Additionally, defendant argues that TK's statement did not necessarily refer to the fatal beating. While true, this did not make it inadmissible. As stated above, there was sufficient evidence to support a jury finding that TK made her statement while under the excitement of her brother's murder, and the trial court thus did not abuse its discretion in admitting the challenged statements.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next raises several arguments in a Standard 4 brief, beginning with the assertion that trial counsel rendered ineffective assistance. To preserve a claim of ineffective assistance of counsel, a defendant must move for a new trial or an evidentiary hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). *People v Armisted*, 295 Mich App 32, 46; 811 NW2d 47 (2011). Nothing in the record indicates that defendant moved for a new

---

[3] The trial court was permitted to consider the statement itself as evidence that TK was under the excitement of a startling event. *People v Barrett*, 480 Mich 125, 137; 747 NW2d 797 (2008).

trial or for an evidentiary hearing. Thus, this issue is unpreserved. Unpreserved claims of ineffective assistance of counsel are reviewed for errors that are apparent on the record. *Id*. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

The Sixth Amendment to the United States Constitution and Article I, § 20 of the Michigan Constitution guarantee the right to effective assistance of counsel for criminal defendants. *Strickland v Washington*, 466 US 668, 684-686; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Aceval*, 282 Mich App 379, 386; 764 NW2d 285 (2009). To establish that his counsel did not render effective assistance and therefore that he is entitled to a new trial, "defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009) (internal quotation marks and citation omitted).

Defendant alleges several discrete instances of ineffective assistance of counsel. First, defendant argues that Kemp wrote a letter confessing to her son's murder. Defendant claims that she sent the letter to the trial court, which forwarded the letter to the prosecutor, who forwarded the letter to defense counsel. Defendant argues that his trial counsel was ineffective for failing to move to quash the indictment or investigate the letter. While defendant has attached the letter and correspondence regarding it as an exhibit to his Standard 4 brief, there is no indication in the lower court record of what, if anything, transpired concerning the letter, prior to trial. "[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). As our Supreme Court explained in *Ginther*, 390 Mich at 442-443, quoting *People v Jelks*, 33 Mich App 425, 431; 190 NW2d 294 (1971):

> "A convicted person who attacks the adequacy of the representation he received at his trial must prove his claim. To the extent his claim depends on facts not of record, it is incumbent on him to make a testimonial record at the trial court level in connection with a motion for a new trial which evidentially supports his claim and which excludes reasonable hypotheses consistent with the view that his trial lawyer represented him adequately."

Here, without a record, there is no basis for determining that defense counsel was ineffective for not taking the actions that defendant claims he should have taken. It is possible, for example, that the confession was discredited before trial. It is also possible that if Kemp wrote the statement, that she later retracted it. In short, there is nothing to indicate that counsel did, in fact, fail to investigate the letter. Consequently, defendant has failed to establish the factual predicate for his claim.

Defendant additionally argues that counsel should have called Kemp "to testify to whether she actually wrote the letter and if it was true or not." Kemp was convicted on March 1, 2013, before defendant's trial began. She thereafter appealed her conviction, albeit a short time after defendant was convicted. However, a defendant retains her right against self-incrimination

when her conviction is pending on appeal, that is, until the case has been prosecuted to a *final* conclusion. *People v Giacalone*, 399 Mich 642, 644; 250 NW2d 492 (1977); *People v Den Uyl*, 318 Mich 645; 29 NW2d 284 (1947)(emphasis added). Counsel cannot be faulted for failing to call Kemp, when it appears likely she would have invoked her privilege against self-incrimination if called. See *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998) (counsel cannot be ineffective for declining to take a futile action).

Defendant also argues that his counsel should have objected to evidence that he abused Kemp because it was irrelevant, as it was unrelated to his alleged abuse of the victim. However, the evidence was relevant to the prosecutor's proffered version of the events that resulted in the boy's death. The prosecutor's theory was that defendant isolated Kemp and her children and initiated a pattern of escalating violence against them that culminated in defendant and Kemp killing the boy together. The prosecutor was entitled to "give the jury an intelligible presentation of the full context in which disputed events took place." *People v Sholl*, 453 Mich 730, 741; 556 NW2d 851 (1996). Consequently, defendant has not shown that his trial counsel was ineffective for failing to object. *Fike*, 228 Mich App at 182.

Finally, defendant argues that his trial counsel should have objected to the admission of his statements from his police interviews because "had not yet had a chance to decide if he was going to testify." Defendant offers no authority to establish that this was a principled basis for an objection. The statements were admissible as admissions of a party opponent under MRE 801(d)(2). Thus, it appears that any objection by defense counsel would have been meritless, and his failure to raise a meritless objection did not constitute ineffective assistance. *People v Torres (On Remand)*, 222 Mich App 411, 425; 564 NW2d 149 (1997).

## IV. PRIOR BAD ACTS

The evidence established that both defendant and Kemp were in the apartment they shared at the time of the murder. However, there was almost no direct evidence indicating whether the victim was beaten to death by defendant, Kemp, or both of them together. The prosecutor theorized that defendant and Kemp both beat the victim. To prove this theory, the prosecutor introduced extensive background evidence. The prosecutor introduced testimony portraying Kemp as a good mother before she met defendant. Thereafter, the prosecutor alleged, defendant exerted dominance over Kemp and her children through violence. Evidence was introduced that defendant had beaten Kemp. Witnesses also testified that defendant had said that he could beat the children if he wanted because he was the man of the house. The prosecutor introduced testimony suggesting that defendant was obsessed with having the victim and TK potty-trained. One witness testified that defendant and Kemp would force the victim to sit on a training potty for hours and that Kemp beat TK at defendant's direction after she had a related accident.

Defendant essentially argues that the trial court erred in allowing the prosecutor to construct this narrative of the events leading to the charged crimes because it concerned the character of both he and Kemp and was violative of MRE 404(a) and (b) as well as irrelevant. At a hearing shortly before trial, the trial court found that the evidence was "highly probative and relevant for this jury to hear the Prosecution's theory that the way that this was allowed to have occurred is through certain acts and statements of the Defendant that created a situation of

isolation and escalation." It concluded that the evidence was part of the res gestae of the murder. We review the trial court's ruling for an abuse of discretion. *People v Layher*, 238 Mich App 573, 582; 607 NW2d 91 (1999).

" 'It is the nature of things that an event often does not occur singly and independently, isolated from all others, but, instead, is connected with some antecedent event from which the fact or event in question follows as an effect from a cause.' " *Sholl*, 453 Mich at 742, quoting *People v Delgado*, 404 Mich 76, 83; 273 NW2d 395 (1978). When such antecedent events involve criminal offenses, " 'the principle that the jury is entitled to hear the 'complete story' ordinarily supports the admission of such evidence.' " *Sholl*, 453 Mich at 742, quoting *Delgado*, 404 Mich at 83. Furthermore, as previously indicated, "it is essential that prosecutors and defendants be able to give the jury an intelligible presentation of the full context in which disputed events took place." *Id*. at 741.

The trial court correctly concluded that the evidence at issue provided the full context of the criminal acts. The evidence of the atmosphere in the household was essential to the prosecutor's case, as it showed how the child's death could occur. Under the principle that the jury was entitled to hear the "complete story," the prior acts of violence against both Kemp and the children were admissible.

Defendant's argument that the prosecutor improperly introduced evidence of Kemp's character as a good mother is misconceived. MRE 404(a) states, "Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion."[4] In this case, the prosecutor presented friends and family of Kemp who testified that she was a good mother before she met defendant. While it is generally stated that character evidence is not admissible, the use in this case did not violate the plain language of the rule. The evidence that Kemp was a good mother was used not to prove that she acted as a good mother on a particular occasion, but rather to show that she had changed after she started dating defendant. This fit with the prosecutor's theory that defendant caused a dramatic shift in the household environment when he moved in. In addition, contrary to defendant's contentions, the prosecutor did not use the evidence to establish that Kemp did not beat her son because she was a good mother. The prosecutor's theory was that defendant and Kemp together beat BK to death.

To the extent that defendant argues that the prosecutor improperly admitted evidence of his bad character, defendant merely argues that the prosecutor elicited testimony that defendant was "unemployed and had problems with drinking and anger management," and that defendant "had a problem with anger and frustration, and that he took out his frustration on Mercedes Kemp." However, defendant fails to identify what that evidence was, other than noting two page numbers of the trial transcript. "Defendant may not leave it to this Court to search for a factual basis to sustain or reject his position." *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008). Moreover, this evidence, too, was not used to prove that action in conformity therewith on a particular occasion, i.e. that he hit his girlfriend. And, contrary to defendant's argument, the

---

[4] There are exceptions to this general rule, none of which applies here. See MRE 404(a)(1)-(4).

prosecutor did not argue to the jury that it should convict defendant because he had a bad character. In fact, the prosecutor told the jury that it should not consider the evidence in this manner.

## V. DOMESTIC VIOLENCE

Defendant concedes that evidence that he abused Kemp was admissible under MCL 768.27b. That statute provides in pertinent part as follows:

(1) Except as provided in subsection (4), in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

\* \* \*

(5) As used in this section:

(a) "Domestic violence" or "offense involving domestic violence" means an occurrence of 1 or more of the following acts by a person that is not an act of self-defense:

(*i*) Causing or attempting to cause physical or mental harm to a family or household member.

(*ii*) Placing a family or household member in fear of physical or mental harm.

(*iii*) Causing or attempting to cause a family or household member to engage in involuntary sexual activity by force, threat of force, or duress.

(*iv*) Engaging in activity toward a family or household member that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

(b) "Family or household member" means any of the following:

(*i*) A spouse or former spouse.

(*ii*) An individual with whom the person resides or has resided.

(*iii*) An individual with whom the person has or has had a child in common.

(*iv*) An individual with whom the person has or has had a dating relationship. As used in this subparagraph, "dating relationship" means frequent, intimate associations primarily characterized by the expectation of affectional

-8-

involvement. This term does not include a casual relationship or an ordinary fraternization between 2 individuals in a business or social context.

Defendant argues, however, that pursuant to MCL 768.27b(1), the trial court should have excluded the evidence that defendant abused Kemp because it was unfairly prejudicial under MRE 403. That rule of evidence provides, in part, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." The trial court declined to exclude the evidence under MRE 403, stating, "[T]hese are highly probative matters that will explain to the jury how exactly this could happen when there's another individual, the mother, in the home and there's people who are involved in the—in the mother's life how it is that this could happen over a course of time." The court admitted that the evidence would have some prejudicial effect, but concluded that "the probative value highly outweighs any prejudicial effect."

The trial court did not abuse its discretion in so deciding. "Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). However, that is only part of the inquiry under MRE 403. Unfair prejudice must be weighed against probative value. The trial court found that the evidence that defendant abused Kemp was "highly probative" of the circumstances in the household that led to the victim's murder. We agree.

Affirmed.


/s/ Donald S. Owens
/s/ Jane E. Markey
/s/ Deborah A. Servitto