PEOPLE v DELGADO

Docket No. 58501. Argued June 9, 1977 (Calendar No. 23).—Decided
    December 27, 1978. Rehearing denied 405 Mich 1001.

Michael Delgado was convicted by a jury in Recorder's Court of
    Detroit, Geraldine Bledsoe Ford, J., of delivery of a controlled
    substance, heroin, to an undercover police officer. Evidence of
    another sale of heroin by the defendant to the same officer five
    days before the sale charged in this case and a recording of a
    telephone conversation between the defendant and the officer
    concerning negotiations for purchase of a sample were admitted
    under the "similar acts" statute, over the defendant's objection.
    A recording of a later telephone conversation was admitted
    without objection. The defendant, on appeal, also challenges the
    instructions to the jury and the closing argument of the prose-
    cuting attorney. The Court of Appeals, D. F. Walsh, P.J., and
    Allen and M. J. Kelly, JJ., affirmed per curiam (Docket No.
    22326). Defendant appeals. *Held:*

1. In the nature of things an event often does not occur
    singly and independently, isolated from all others, but instead
    is connected with some antecedent event from which the fact or
    event in question follows as an effect from a cause. When the
    antecedent event incidentally involves the commission of an-
    other crime, the principle that the jury is entitled to hear the
    complete story ordinarily supports the admission of such evi-
    dence. Evidence of other criminal acts is admissible when so
    blended or connected with the crime of which the defendant is
    accused that proof of one incidentally involves the other or
    explains the circumstances of the crime. An agreement for an
    initial sale of sample heroin and a subsequent sale of a larger
    quantity of heroin was reached at a meeting seven days before

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence §§ 249, 251, 321-328.
[2] 25 Am Jur 2d, Drugs and Narcotics § 46.
    Admissibility, in prosecution for illegal sale of narcotics, or evi-
    dence of other sales. 93 ALR2d 1097.
[3, 4] 25 Am Jur 2d, Drugs and Narcotics §§ 21, 45.
    75 Am Jur 2d, Trial § 713.
[5, 6] 5 Am Jur 2d, Appeal and Error §§ 624-627.

the larger sale charged in this case. Testimony to the effect that the sample purchase of heroin would be made as a condition precedent to a subsequent purchase of a greater quantity, if the sample proved to be of adequate quality, was admitted into evidence without objection. When the defendant later objected to admission of a recording of the telephone conversation concerning the negotiations for the purchase of the sample, the jury had already been made aware of the two separate but interrelated sales of heroin. In addition, the recording of the conversation setting up the sale of the larger amount of heroin, which was admitted without objection, made clear reference to the prior sale of the sample. Quite literally, the sale charged in this case followed from the earlier sale, as an effect follows from a cause. Therefore, the jurors were entitled to have before them the facts concerning the sale of the sample as an integral part of the events which were incidental to the larger sale. It is unnecessary to decide whether the evidence was admissible under the "similar acts" statute.

2. Although neither case law nor the present or former statutes mandate an instruction to the jury that knowledge is an essential element of the offense of unlawful delivery of a controlled substance, the better practice is to give the instruction to guarantee the fundamental *mens rea* requirements of the criminal law. The knowledge instruction is essential, of course, in cases where the evidence reasonably raises the issue whether the defendant, particularly an aider and abettor, knows the nature of the substance which he is delivering. In this case, however, the defendant did not argue that he lacked knowledge that the substance was a narcotic, or that the people had failed to prove his knowledge to that effect. The defendant claimed that there had been no transaction between himself and the undercover police officer. He did not request a specific instruction on knowledge nor did he object to the trial court's failure to give an instruction on knowledge. Therefore, there was no reversible error in the trial judge's failure to give the instruction in this case.

3. The trial court sustained one objection by the defendant to a remark of the prosecutor made during arguments to the jury, and instructed the jury generally to consider only the evidence in the case. The defendant did not request a more specific cautionary instruction to the jury about the prosecutor's argument but contends on appeal that the prosecutor made five other improper remarks during his arguments to the jury. Where no objection to the argument is made at trial, appellate review is precluded unless failure to consider the issue would

result in a miscarriage of justice. While some of the remarks here might have been better left unsaid, the remarks were not fatally prejudicial or entirely without provocation.

Justice Williams, concurring in the result, would rely on the "similar acts" statute.

Affirmed.

1. CRIMINAL LAW — EVIDENCE — ADMISSIBILITY — SIMILAR ACTS.

Evidence of criminal acts other than the one of which the defendant is accused is admissible when so blended or connected with the crime of which the defendant is accused that proof of one incidentally involves the other or explains the circumstances of the crime charged.

2. DRUGS AND NARCOTICS — CONTROLLED SUBSTANCE — DELIVERY — EVIDENCE — ADMISSIBILITY — SIMILAR ACTS.

The jurors were entitled to have before them evidence of a sale of a sample of heroin by a defendant as an integral part of the events which were incidental to a sale of a larger amount of heroin with which the defendant was charged where the jury had already been made aware without objection by the defendant that there had been two separate but interrelated sales of heroin to an undercover police officer (MCL 335.341[1]; MSA 18.1070[41][1]).

3. DRUGS AND NARCOTICS — CONTROLLED SUBSTANCE — DELIVERY — INSTRUCTIONS TO JURY — KNOWLEDGE.

An instruction to the jury that knowledge is an essential element of the offense of delivery of a controlled substance ought to be given to satisfy the fundamental *mens rea* requirements of the criminal law (MCL 335.341[1]; MSA 18.1070[41][1]).

4. DRUGS AND NARCOTICS — CONTROLLED SUBSTANCE — DELIVERY — INSTRUCTIONS TO JURY — KNOWLEDGE.

Failure to give an instruction to the jury on the element of knowledge was not reversible error in a trial for delivery of a controlled substance where the defendant did not argue at trial that he lacked knowledge that the substance he allegedly sold to an undercover police officer was a narcotic, or that the people failed to prove his knowledge to that effect, but the defendant's sole claim was that there was no transaction whatsoever between himself and the undercover police officer (MCL 335.341[1]; MSA 18.1070[41][1]).

5. CRIMINAL LAW — ARGUMENT OF COUNSEL — PRESERVING QUESTION.

Appellate review of a prosecutor's closing argument is precluded

in the absence of objection unless failure to consider the issue
would result in a miscarriage of justice.

6. CRIMINAL LAW — ARGUMENT OF COUNSEL.

A prosecutor's remarks to the jury were not sufficiently improper
to require reversal of a conviction where the remarks were not
fatally prejudicial or entirely without provocation, the defend-
ant did not object to five of the six remarks which he argues, on
appeal, were improper, and he did not request a curative
instruction to the jury.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Edward Reilly Wilson,* Prin-
cipal Attorney, Appeals, and *Andrea L. Solak,*
Assistant Prosecuting Attorney, for the people.

*Carl Ziemba* for defendant.

RYAN, J. Michael Delgado was tried by a jury
and convicted of delivery of a controlled substance,
heroin, MCLA 335.341(1)(a); MSA 18.1070(41)(1)(a).
His conviction was affirmed by the Court of Ap-
peals in an unpublished per curiam opinion. We
granted leave to appeal. 399 Mich 837 (1977).

The defendant's conviction arose out of a course
of continuing conduct in which he sold a quantity
of heroin to one Vincent Mazzara, a City of Detroit
undercover police officer. During the course of the
dealing, Delgado delivered heroin to Mazzara on
two occasions, January 17 and 22, 1974. The infor-
mation filed in the instant case charged defendant
only with delivery of heroin on January 22. In a
separate information, defendant was charged with
selling an ounce of heroin to Mazzara on January
17.

Before the trial concerning the January 22 sale,
which is the matter before us, the defendant's
attorney moved to consolidate the two cases based
upon considerations of expedience and collateral
estoppel and, because, as he put it: "[it] is just one

entire transaction, even though there are two different dates."[1] The trial judge denied the motion because she believed there were two separate transactions and no "compelling factual reason or legal reason to consolidate them for trial". Testimony concerning the January 17 sale was admitted at defendant's trial on the justification that it constituted a "similar act" within the meaning of MCLA 768.27; MSA 28.1050. On appeal defendant contests the admissibility of the "similar acts" testimony; he has not contested the denial of the motion to consolidate.[2]

The people's case is built primarily around the testimony of undercover officer Mazzara. Mazzara's testimony begins with his introduction to defendant, Delgado. A mutual acquaintance, Herbert Schpre, arranged a meeting between Mazzara and defendant in consideration of a promise that if Mazzara purchased heroin from Delgado, Schpre would receive 10% of the purchase price. At this meeting, which occurred on January 15, defendant took the position that he would sell nothing less than a quarter kilo of heroin. As the buyer, Mazzara maintained that he would first like a sample of the heroin and explained that if he liked the sample he would then buy a quarter kilo. After

[1] In making the motion to consolidate, defendant's attorney argued, "My thinking is that both cases were one, even though they arose at two separate times". "[B]oth cases arose out of the exact same agreement, but just to make two different deliveries at different times."

"Because prior to the alleged delivery on the 17th, there was discussion as to a continuing type thing. And it wasn't like the rape case, you know, leaving and saying I will be back tomorrow night, be waiting for me. This was like an agreed upon arrangement at the time the alleged first agreement was made, or the alleged delivery was made. So, I believe that [it] is just one entire transaction, even though there are two different dates."

[2] The prosecutor states in his brief on appeal that the January 17, 1974 charge was dismissed on July 17, 1975.

much discussion defendant acceded to Mazzara's terms and agreed to sell him a single ounce as a sample, as soon as the drug became available.

At the conclusion of Mazzara's direct examination, the prosecutor sought to introduce a tape recording of a January 17 telephone conversation between the witness and the defendant. The defendant objected to the admission of the tape on the ground that the judge had earlier ruled that it was not part of the same transaction and that the probative value of the evidence was outweighed by its unduly prejudicial character so as to preclude its introduction under the "similar acts"[3] statute. Overruling defendant's challenge, the trial judge permitted the recording to be admitted under the statute.

After Mazzara testified that he had placed a telephone call at 1:30 a.m. on January 17 to defendant at the Ball Park Bar, which defendant owned, the prosecutor proceeded to play the recorded telephone conversation for the court and jury. In that conversation defendant told Mazzara to come to the bar, and Mazzara asserted that he had "got the cash and everything".

Mazzara testified that he arrived at the bar at about 2 a.m. and that defendant took him to his car in the parking area where Mazzara purchased one ounce of very dark heroin from Mexico for $1600. Mazzara told defendant that if "his people"

---

[3] "In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant." MCLA 768.27; MSA 28.1050.

The foregoing statute has since been superseded by MRE 404(b).

liked the sample, he would "get back with him to possibly purchase a quarter kilo".

Mazzara's testimony continued with his description of a meeting with defendant at the Ball Park Bar at about midnight on January 22. Mazzara told defendant he wanted to buy a quarter kilo of heroin and wanted to deal directly with defendant because Schpre's percentage was too high. Defendant gave Mazzara his home phone number and told Mazzara to call him at home at around 3 a.m.

Mazzara made the 3 a.m. telephone call as instructed. A tape recording of that conversation was received as evidence without objection and played for the jury. In that conversation defendant said he had three ounces of the "same kind", but stronger, at a price of "eighteen". Mazzara agreed to meet defendant at defendant's house.

Mazzara arrived at defendant's house at about 3:30 a.m. on January 22. He purchased three ounces of dark brown Mexican heroin for $5400. Mazzara said if he liked the heroin he would call back within a day or two to buy a larger quantity.

After the close of the people's proofs, defendant rested without presenting any evidence. In closing argument, defense counsel vigorously attacked Mazzara's credibility and argued the existence of reasonable doubt.

I

The first issue involves the question of admissibility of evidence of defendant's January 17 sale of heroin to Mazzara.

Defendant contends that the introduction of the evidence concerning the January 17 delivery of heroin tended to show that he was guilty of a separate and distinct criminal act. Accordingly, he

asserts that the recorded conversation of January 17 and the testimony relative to the alleged purchase on the 17th should not have been admitted into evidence. We disagree.

It is the nature of things that an event often does not occur singly and independently, isolated from all others, but, instead, is connected with some antecedent event from which the fact or event in question follows as an effect from a cause. When such is the case and the antecedent event incidentally involves the commission of another crime, the principle that the jury is entitled to hear the "complete story" ordinarily supports the admission of such evidence. *State v Villavicencio,* 95 Ariz 199; 388 P2d 245 (1964); *People v Wardwell,* 167 Cal App 2d 560; 334 P2d 641 (1959); McCormick on Evidence (2d ed), § 190.

Stated differently:

"Evidence of other criminal acts is admissible when so blended or connected with the crime of which defendant is accused that proof of one incidentally involves the other or explains the circumstances of the crime." *State v Villavicencio, supra,* at 201.

See also *State v Page,* 395 SW2d 146 (Mo, 1965); *United States v McCartney,* 264 F2d 629 (CA 7, 1959); *Guajardo v State,* 168 Tex Crim 503; 329 SW2d 878 (1959); *State v Kuhnley,* 74 Ariz 10; 242 P2d 843 (1952); 1 Wigmore, Evidence (3d ed), § 218; 1 Wharton's Criminal Evidence (12th ed), § 284.

The foregoing principle is applicable to this case. An agreement for an initial sale of sample heroin and a subsequent sale of a larger quantity of heroin was reached at the January 15 meeting between Mazzara and defendant. Mazzara's testimony concerning this meeting clearly delineated an anticipated course of dealing in which the

sample purchase of heroin would be made as a condition precedent to a subsequent purchase of a greater quantity of the same, if the sample proved to be of adequate quality. Mazzara's testimony to that effect was received without objection. When later in Mazzara's testimony the defendant objected to admission of the telephone recording of the 17th, which concerned the negotiations for the sample purchase, the jury had already been made aware of the fact that there had been two separate but interrelated sales of heroin. In addition, the recorded telephone conversation of the 22nd setting up the sale to be made on that date, which was received without objection, made clear reference to the prior sale. In that conversation defendant said he had three ounces of the "same kind", but "stronger" at a price of "eighteen".

The defendant's peculiar and inconsistent pattern of objection did not serve to insulate the jury from awareness of the fact that there had been a prior sale, but served only to keep from the jury the specific details of the course of dealing between the 15th and the 22nd and interrupted the continuity of the testimony relating to it.

As the recital of the facts discloses, the sale on the 17th and the sale on the 22nd were inextricably related, one to the other. Quite literally, the sale on the 22nd followed from the sale on the 17th, as does an effect follow from a cause. The jurors were entitled to have before them the facts concerning the sale of January 17 as an integral part of the events which were incidental to the January 22 sale.

In finding that the evidence was properly before the jury, we deem it unnecessary to decide whether the evidence was admissible under the "similar acts" statute and intimate no view with respect thereto.

## II

Defendant next contends that the trial judge erred reversibly in failing to instruct[4] that knowledge that the substance delivered was heroin is an element of the offense of delivery of a controlled substance.

We reject this claim of error. In *People v Rios,* 386 Mich 172; 191 NW2d 297 (1971), this Court looked to the statute prohibiting the unlawful sale of narcotics in order to determine the essential elements of that offense. The statutory provision[5] at issue in *Rios* was the predecessor to the "deliv-

---

[4] In addition to reading the pertinent statute and the information, the trial judge instructed on the elements of the offense:

"Now, in order to establish the defendant's guilt to your satisfaction beyond a reasonable doubt, the people are required to establish certain elements which constitute the offense of delivery of heroin.

"First, the people must establish that the defendant, Michael Delgado, did in fact deliver to Vincent Mazzara heroin on or about the 22nd day of January, 1974. In that connection, delivery is defined in its ordinary term as a transfer of a thing, a substance or an article from one person to another.

"You must also be satisfied that the substance at issue here, people's exhibit 4, is heroin. And, of course, you have heard the testimony of Mrs. Reynolds, who testified regarding the identification of the nature of the substance referred to as people's exhibit 4.

"So, if you are convinced beyond a reasonable doubt that people's exhibit 4 is heroin, and that on or about January 22, 1974, that Michael Delgado transferred or delivered that heroin to Vincent Mazzara through a sale, it would be your duty to return a verdict of guilty.

"On the other hand, if the evidence offers a reasonable doubt as to the guilt of the defendant, Michael Delgado, on those elements, it would be your duty to return a verdict of not guilty."

[5] "Any person not having a license under the provisions of Act No. 343 of the Public Acts of 1937, as amended, being sections 335.51 to 335.78, inclusive, of the Compiled Laws of 1948, who shall sell, manufacture, produce, administer, dispense or prescribe any narcotic drug shall be deemed guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the state prison for a term of not less than 20 years nor more than life." MCLA 335.152; MSA 18.1122.

ery" statute[6] at issue in this case. In *Rios,* after reviewing the former statute, this Court held that the elements of an unlawful sale of narcotics were: "(1) the lack of license; (2) sale of a prohibited narcotic drug; (3) to another identifiable person." The former statute made no mention of knowledge of the character of the substance and this Court did not find knowledge to be an essential element of the offense. Similarly, the present statute prohibiting the unlawful delivery of a controlled substance makes no mention of knowledge. Accordingly, we cannot reasonably conclude that either the case law or the statute proscribing the delivery of heroin required the trial judge, at the time this case was tried, to instruct the jury that knowledge that the substance was heroin is a separate element of the offense of the delivery of a controlled substance.

Although neither the case law nor the statute mandates an instruction to the jury that knowledge is an essential element of the crime, better practice suggests that the instruction be given in "delivery" cases to guarantee fundamental criminal *mens rea* requirements.[7] The knowledge in-

---

[6] The pertinent portion of MCLA 335.341(1); MSA 18.1070(41)(1), reads:

"Except as authorized by this act, it is unlawful for any person to manufacture, deliver or possess with intent to manufacture or deliver, a controlled substance."

"Deliver" is defined by MCLA 335.304; MSA 18.1070(4) as:

" 'Deliver' or 'delivery' means the actual, constructive or attempted transfer from 1 person to another of a controlled substance, whether or not there is an agency relationship."

[7] Proposed CJI 12:2:03 requires that the defendant have transferred a substance, "knowing that the substance was *[list substance]* and intending to so deliver it to another person". The committee commentary acknowledges that neither the definition of delivery nor the provision proscribing delivery uses the terms "knowledge" or "knowing". Notwithstanding this fact, the committee decided, after considerable debate, to adopt the instruction in view of the differing penalties for various substances under the Controlled Substances Act and because of the problem of the innocent carrier. 2 Michigan Criminal

struction is essential, of course, in cases wherein there is reasonably raised in the evidence the issue of whether the defendant, particularly an aider and abettor, knows the nature of the substance which he is delivering.

The case before us, however, is not at all analogous to such instances. At trial, Delgado did not argue that as the alleged seller of the heroin he lacked knowledge that the substance involved was a narcotic, or that the people failed to prove his knowledge to that effect. Rather, the defendant's tactic was to attack the general credibility of police agent Mazzara. The determinative factor in the case was the credibility of Mazzara in relating the events of the alleged transaction between himself and the defendant. Essentially, the defendant's sole claim was that there was no transaction whatsoever between himself and Mazzara. Defendant did not request a specific instruction on knowledge nor did he object to the court's failure to give a knowledge instruction.

We find no reversible error in the trial judge's failure to give a knowledge instruction in this case.

### III

Defendant's final contention is that the prosecutor's closing argument was improper in six instances. Although defendant's objection to the first of those remarks was sustained, defendant made no objection at trial to the remaining five remarks he now argues were improper. Defendant did not request a cautionary instruction, and no instruc-

---

Jury Instructions (Ann Arbor: Institute of Continuing Legal Education), p 12-30.

tion specifically directed toward the prosecutor's argument was given. The trial judge did instruct generally that "the law, of course, does not permit jurors to be governed by sympathy, by prejudice or by public opinion", that the jury was to "consider only the evidence in the case" and that attorneys' "statements and arguments are not evidence".

Where no objection to prosecutorial argument is made below, appellate review is precluded unless failure to consider the issue would result in a miscarriage of justice. *People v Duncan,* 402 Mich 1, 16; 260 NW2d 58 (1977) (opinion by RYAN, J.), and cases cited therein. While some of the remarks here might have been better left unsaid, the remarks were not "fatally prejudicial or entirely without provocation". *People v Allen,* 351 Mich 535, 544; 88 NW2d 433 (1958).

Affirmed.

KAVANAGH, C.J., and LEVIN, COLEMAN, FITZGERALD, and BLAIR MOODY, JR., JJ., concurred with RYAN, J.

WILLIAMS, J. *(concurring in result).* I would rely on the "similar acts" statute, MCLA 768.27; MSA 28.1050.