# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

NICHOLAS MICHAEL GIBBINS,

Defendant-Appellant.

UNPUBLISHED
March 10, 2015

No. 317442
Wayne Circuit Court
LC No. 12-002204-01-FH

Before: GLEICHER, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of arson of a dwelling house, MCL 750.72, two counts of resisting or obstructing a police officer, MCL 750.81d(1), and two counts of resisting or obstructing a police officer causing injury, MCL 750.81d(2). We affirm.

Defendant's convictions arise from events that occurred during the early morning hours of December 13, 2011. After a telephone conversation with defendant, defendant's mother called for emergency assistance and reported that defendant was suicidal. The prosecution's theory of the case was that when the police responded to defendant's apartment, defendant started a fire inside his apartment, left the apartment, and then was confronted by police officers outside his apartment. Police witnesses testified that defendant refused to comply with repeated commands to show his hands and then, while assuming a shooter's stance, produced a black shiny object in this hand, prompting officers to shoot at defendant because they believed he had a gun and was preparing to shoot. Defendant sustained a nonfatal shotgun wound to his abdomen. After defendant was shot, the police discovered that he did not have a weapon and was holding a cellular telephone. The defense theory at trial was that defendant did not start any fire or resist or obstruct any officer, that the police actions "were unprovoked, unnecessary and unjustified," and that the police "fabricated" the incident "to conceal their unprovoked and unnecessary lethal force against [defendant]." The trial court directed a verdict in favor of defendant on one count of resisting or obstructing a police officer, but the jury convicted him of the remaining charges.

## I. OTHER ACTS EVIDENCE

Defendant argues that the trial court erred in allowing the prosecution to introduce evidence that Officer Boritzki, one of the officers who responded to defendant's apartment, informed other officers at the scene that defendant was the subject of an ongoing investigation involving his conveyance of threats to another person. Officer Boritzki alerted the other officers

-1-

that, during her investigation of the unrelated matter, she observed photographs of defendant holding apparent firearms. Officers testified that they considered this information in determining how to assess and approach the situation at defendant's apartment.

We review a trial court's decision to admit evidence for an abuse of discretion, but review any preliminary questions of law de novo. *People v Washington*, 468 Mich 667, 670-671; 664 NW2d 203 (2003). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *People v Malone*, 287 Mich App 648, 661; 792 NW2d 7 (2010).

Defendant argues that evidence of the pending police investigation of the earlier matter should have been excluded under MRE 404(b)(1), which prohibits evidence of a defendant's prior bad acts to prove a defendant's character or propensity to commit the charged crime. We conclude that MRE 404(b)(1) did not prohibit the challenged evidence because the evidence was admissible as part of the res gestae of the offense. In *People v Sholl*, 453 Mich 730, 741-742; 556 NW2d 851 (1996) (citation omitted), our Supreme Court concluded that evidence of a defendant's other bad acts may be admitted as part of the res gestae of an offense when the evidence is "so blended or connected with the crime of which defendant is accused" that proof of the former "incidentally involves the other or explains the circumstances of the crime." In *Malone*, 287 Mich App at 662, this Court explained:

> It is proper to provide background information to the jury to allow them to examine the full transaction. "The more the jurors kn[ow] about the full transaction, the better equipped they [are] to perform their sworn duty." *People v Sholl*, 453 Mich 730, 742; 556 NW2d 851 (1996).
>
>> It is the nature of things that an event often does not occur singly and independently, isolated from all others, but, instead, is connected with some antecedent event from which the fact or event in question follows as an effect from a cause. When such is the case and the antecedent event incidentally involves the commission of another crime, the principle that the jury is entitled to hear the "complete story" ordinarily supports the admission of such evidence. *State v Villavicencio*, 95 Ariz 199; 388 P2d 245 (1964); *People v Wardwell*, 167 Cal App 2d 560; 334 P2d 641 (1959); McCormick on Evidence (2d ed), § 190. [*People v Delgado*, 404 Mich 76, 83; 273 NW2d 395 (1978).]"
>
> Evidence of other criminal acts is admissible when it explains the circumstances of the crime. *Sholl*, 453 Mich at 742 (citations omitted). In light of the limited purpose for the evidence, the prosecution was not required to file a motion to admit prior bad acts evidence.

In this case, Officer Boritzki testified that during her investigation of a separate matter involving defendant, she viewed photographs that showed defendant holding firearms. The furnishing of this information to other officers who responded to defendant's apartment was part of the chronological chain of events preceding defendant's shooting and arrest. The information

-2-

was probative of the officers' state of mind and was relevant to an understanding of why the officers proceeded and acted as they did, including whether they reasonably believed that defendant might be armed with a weapon. Several officers testified that they considered this information in determining how to assess and approach the situation. Thus, the evidence was admissible to explain the circumstances surrounding the charged offenses.

Even if the evidence is considered under MRE 404(b)(1), however, it is clear that the evidence was not offered to prove defendant's character or propensity to commit the charged crimes, but rather for the noncharacter purpose of explaining why the police acted as they did, which was a material issue at trial. In addition, because the evidence was probative of a material issue at trial, and the trial court gave a cautionary instruction advising the jury on the limited, permissible use of the evidence, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice under MRE 403. Thus, admission of the evidence did not violate MRE 404(b)(1). See *People v Sabin (After Remand)*, 463 Mich 43, 57-58; 614 NW2d 888 (2000); *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).

Accordingly, the trial court did not abuse its discretion in admitting the challenged evidence.

Defendant also argues that admission of the evidence violated his constitutional right of confrontation. Because defendant did not object on this basis in the trial court, the constitutional issue is unpreserved. An objection on one ground is insufficient to preserve an appellate challenge based on a different ground. *People v Bulmer*, 256 Mich App 33, 35; 662 NW2d 117 (2003). Therefore, our review of defendant's constitutional argument is limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 761-767; 597 NW2d 130 (1999).

Defendant relies on *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 177 (2004), to argue that his confrontation rights were violated because "the jury heard statements made in the context of another police investigation by another complainant who the prosecutor did not produce at trial, and who defense trial counsel could not cross-examine about [defendant] allegedly making threats." There is no merit to this argument.

In *Crawford*, 541 US at 59, the Supreme Court held that the Confrontation Clause of the Sixth Amendment bars the admission of "testimonial" statements of a witness who does not appear at trial, unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. See *People v Walker (On Remand)*, 273 Mich App 56, 60-61; 728 NW2d 902 (2006). Defendant's reliance on *Crawford* is misplaced because defendant does not identify any statement by the complainant in the other matter that was admitted at defendant's trial in this case. Although Officer Boritzki testified regarding her involvement in the other investigation, she only generally indicated that the investigation involved alleged threats by defendant to another person. While there were references to a complaint in the other case, there was no evidence regarding the substantive allegations. Officer Boritzki also testified that she observed photos of defendant holding a handgun, but that testimony did not involve any out-of-court statement. Thus, defendant has not shown that any testimonial statement was admitted at trial in violation of *Crawford*.

-3-

In addition, because defendant was not charged with any offense relating to the prior matter, and no statements of the complainant or any communications between defendant and the complainant were offered at defendant's trial in this case, defendant has not shown that a proper determination of his guilt or innocence required that he be afforded an opportunity to confront the complainant in the unrelated matter. The only evidence concerning the prior matter that was admitted at defendant's trial consisted of Officer Boritzki's personal knowledge of the nature of her investigation and the contents of photographs that she personally viewed. Defendant was afforded the opportunity to confront Officer Boritzki regarding this information at trial.

Furthermore, to the extent defendant suggests that Officer Boritzki, by describing the general nature of her investigation as one involving alleged threats by defendant toward another person, impliedly conveyed the other person's statements concerning the nature of defendant's conduct, there was no Confrontation Clause violation because this information was not offered for its truth. *Crawford* does not bar the use of an out-of-court statement for a purpose other than establishing the truth of the matter asserted. *People v Chambers*, 277 Mich App 1, 10-11; 742 NW2d 610 (2007). In *Chambers*, this Court observed that "a statement offered to show the effect of the out-of-court statement on the hearer does not violate the Confrontation Clause." *Id.* at 11. The testimony regarding the "threats" complaint filed against defendant was offered only to show its effect on the officers who heard this information. It was offered to show how it affected the officers' assessment of the situation at defendant's apartment, and to explain why they proceeded and acted as they did. Because the testimony was not offered for the purpose of establishing the truth of the matter asserted, it did not violate the Confrontation Clause.

Defendant also argues that trial counsel was ineffective for not raising the Confrontation Clause issue in the trial court. Having found no merit to that issue, we reject defendant's argument that defense counsel was ineffective for not raising it. Counsel is not required to make a futile objection. *Id.*

## II. MISTRIAL

Defendant next argues that the trial court erred in denying his motion for a mistrial after it was discovered that the jury had been exposed to extraneous information. This Court reviews a trial court's ruling on a motion for a mistrial for an abuse of discretion. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). An abuse of discretion occurs if the trial court's decision is outside the range of principled outcomes. *Id.*

After the jury rendered its verdict, the trial court discovered that the packets of jury instructions provided to the jurors also included copies of the information and the prosecution's witness list filed in the case. Defendant argues that the jury's exposure to these documents requires a new trial. In *People v Budzyn*, 456 Mich 77, 88-90; 566 NW2d 229 (1997), our Supreme Court set forth the following guiding principles for determining whether a jury's exposure to extraneous influences requires a new trial:

> In order to establish that the extrinsic influence was error requiring reversal, the defendant must initially prove two points. First, the defendant must prove that the jury was exposed to extraneous influences. See *Marino v Vasquez*, 812 F2d 499, 504 (CA 9, 1987). See also *United States v Caro-Quintero*, 769 F

Supp 1564, 1573 (CD Cal, 1991).  Second, the defendant must establish that these extraneous influences created a real and substantial possibility that they could have affected the jury's verdict.  See *Hughes, supra* at 700.  Generally, in proving this second point, the defendant will demonstrate that the extraneous influence is substantially related to a material aspect of the case and that there is a direct connection between the extrinsic material and the adverse verdict.  See *Caro-Quintero, supra* at 1574, citing *United States v Bagnariol*, 665 F2d 877, 885 (CA 9, 1981).  If the defendant establishes this initial burden, the burden shifts to the people to demonstrate that the error was harmless beyond a reasonable doubt.  We examine the error to determine if it is harmless beyond a reasonable doubt because the error is constitutional in nature.  See *People v Anderson (After Remand)*, 446 Mich 392, 406; 521 NW2d 538 (1994).  The people may do so by proving that either the extraneous influence was duplicative of evidence produced at trial or the evidence of guilt was overwhelming.  See *Hughes, supra* at 700. [Footnotes omitted.]

Although some of the information contained in the filed information and in the prosecution's witness list was a matter of record at trial, both documents contained information that was not the subject of any trial testimony and was not duplicative of other evidence at trial. To that extent, the documents qualify as extraneous.  *Budzyn*, 456 Mich at 91.  We agree with the trial court, however, that, to the extent any challenged information was extraneous, there is no real and substantial possibility that it affected the jury's verdict.

Defendant argues that he was prejudiced because the information reminded the jury that there had been an additional count of resisting or obstructing a police officer involving Officer Boritzki.  Contrary to what defendant argues, this particular information was not extraneous. Although the trial court granted a directed verdict on the count involving Officer Boritzki, there were multiple references to that count during trial.  There were references to that count during jury voir dire and in the prosecutor's opening statement.  In addition, the trial court explained the purpose of an information and actually read the information to the jury during voir dire, including the count resisting or obstructing Officer Boritzki, and it instructed the jury twice that the information is not evidence.  Just after the jury was selected and before opening statements were made, the court again went over the elements of the charged offenses, including the count involving Officer Boritzki.  It is apparent from this record that the jury was aware that defendant had been charged with five counts of resisting or obstructing a police officer, even though they deliberated on only four of those counts.  Thus, the existence of an original additional count pertaining to Officer Boritzki was not extraneous.  The jury's exposure to the filed information that listed that count did not provide it with any new information that had not already been disclosed during the trial.  Furthermore, considering that defendant was not convicted of the count involving Officer Boritzki, and that the original count was mentioned throughout the trial, there is no real and substantial possibility that the jury's exposure to that information during deliberations affected its verdict.

Defendant also argues that he was prejudiced because the information listed different aliases for defendant.  We disagree.  First, defense counsel elicited testimony regarding defendant's use of a different name during his cross-examination of defendant's mother, who testified that defendant changed his last name after she remarried.  Second, most of the aliases

were just variations in the spelling of defendant's name. Third, defendant's identity was not an issue in the case, defendant was not charged with any crimes involving dishonesty or false statement, and because defendant did not testify, his credibility was not an issue. Under these circumstances, there is no real and substantial possibility that the jury's exposure to defendant's additional aliases affected the jury's verdict.

Defendant next argues that he was prejudiced because the information informed the jury that arson of a dwelling house is punishable by imprisonment for up to 20 years, and also informed the jury of the penalties for the resisting or obstructing counts. Defendant argues that the jury's knowledge of the penalties for the charged offenses likely influenced its verdict. We, again, disagree. We note that during questioning at trial, defense counsel asked defendant's roommate if he was aware that the penalty for perjury was 20 years, "the same amount of time that [defendant] could get?" The trial court sustained the prosecutor's objection and instructed the jury to disregard any statements about possible penalty for defendant or the witness, and indicated that any penalty should not affect the jury's decision in any way. In its final jury instructions, the court again instructed the jury that "any possible penalty should not influence your decision." Because the trial court specifically instructed the jury that any possible penalty should not influence its decision, and juries are presumed to follow their instructions, *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998), there is no real and substantial likelihood that the jury's exposure to the penalties for the offenses affected its verdict.

Defendant lastly argues that he was prejudiced by the jury's exposure to the prosecution's witness list, which included several witnesses who were not called at trial. We disagree. During jury voir dire, the court read a list of 22 names of potential witnesses who the prosecution intended to call at trial. Defense counsel read a list of an additional 12 names, which included 10 names that were listed on the prosecution's witness list, but which were not identified by the court during voir dire. Only 17 witnesses testified at trial, and the defense did not call any witnesses. Thus, even without being exposed to the prosecution's witness list, the jury would have been aware that not all of the witnesses who were identified at the beginning of trial were actually called at trial. Defendant speculates that the jury may have concluded from the number of witnesses who were not called that the prosecution's case was overwhelming, and that the prosecution decided not to call additional witnesses because it believed it was not necessary to do so. However, the witness list only displayed the names of potential witnesses, not the substance of any expected testimony. The witness list provided no basis for the jury to infer what testimony any witness who were listed, but not called, could have provided. Accordingly, defendant has not demonstrated a real and substantial possibility that the jury's exposure to the prosecution's witness list affected its verdict.

A trial court should grant a mistrial only when there is an irregularity that is prejudicial to the rights of the defendant, which impaired his ability to receive a fair trial. *Schaw*, 288 Mich App at 236. An irregularity involving the jury's exposure to extraneous information does not require relief unless there is a real and substantial possibility that the jury's exposure to the information affected its verdict. *Budzyn*, 456 Mich at 88-90. As previously explained, the jury was already aware of much of the information that was contained in the filed information and the prosecution's witness list, and there is no real and substantial possibility that the jury's exposure

-6-

to any additional information in those documents affected its verdict. Accordingly, the trial court did not abuse its discretion in denying defendant's motion for a mistrial.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood