*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 18, 2021

Plaintiff-Appellee,

v

No. 350268
Muskegon Circuit Court

THOMAS ADAM HULBERT,

LC No. 18-006239-FH

Defendant-Appellant.

Before: GLEICHER, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals by right his jury trial conviction of domestic violence, third offense, MCL 750.81(5). Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to serve 15 months to 12 years of imprisonment. We affirm.

## I. FACTS & PROCEDURAL HISTORY

This appeal arises from defendant's assault on his ex-wife in October 2018.[1] Defendant and the victim, who were divorced in 2014, gave conflicting testimony regarding the events. The victim testified that she picked up defendant on the day of the assault because he told her he had money to repay her. Defendant then refused to pay her the money and demanded that she take him to get food. An argument ensued, and defendant punched the victim several times in the face.

---

[1] In addition to testimony about the instant assault, the jury also heard testimony from the victim indicating that defendant assaulted her on two prior occasions by striking her in the face. First, the victim testified that in June 2012, defendant struck her in the face and beat her hand when she tried to call 911. Second, the victim testified that in May 2013, defendant struck her in the face when he was intoxicated. The police were contacted after both altercations. Further, the victim acknowledged that in about 2012, she was charged with assault because she allegedly tried to run over defendant with her vehicle. That charged was dropped, and the victim was ultimately convicted of a drunk-driving offense.

-1-

Defendant then exited the victim's vehicle and ran into a nearby business, where he was later arrested. Defendant denied that any such assault occurred.

The arresting officer was wearing a body camera that recorded his interaction with the victim and defendant from the time he responded to the victim's complaint until he finished processing defendant at the police station. The video shows defendant acting in an agitated and disrespectful manner toward the arresting officer after he was arrested. Defendant was convicted of domestic violence and sentenced. He now appeals.

## II. POLICE BODY CAMERA VIDEO RECORDING

Defendant argues that his trial counsel was ineffective for failing to object to the presentation of the final portion of the video which was unfairly prejudicial and should have been excluded from evidence, and that the outcome of his trial was prejudiced by the inclusion of this evidence. Although we conclude that defense counsel's failure to object to the admission of the video fell below an objective standard of reasonableness under prevailing professional norms, defendant was not prejudiced by counsel's performance in light of the other evidence proving the domestic assault charge.

The question whether defense counsel performed ineffectively is a mixed question of law and fact, and we review for clear error the trial court's findings of fact and we review de novo questions of constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Defendant preserved this issue by filing a motion for remand, but because we denied the motion and no evidentiary hearing has been held, our review is limited to errors apparent on the record. See *People v Abcumby-Blair*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 347369); slip op p 8.

A criminal defendant has a constitutional right to the effective assistance of counsel. US Const, Am VI. A defendant who is denied this right is entitled to reversal of the conviction. *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A claim of ineffective assistance of counsel has two components. First, the defendant must show that defense counsel's performance "fell below an objective standard of reasonableness." *Id*. at 688. Second, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id*. at 692. The *Strickland* analysis was adopted by the Michigan Supreme Court as the applicable standard for ineffective assistance of counsel in Michigan. *People v Pickens*, 446 Mich 298, 318; 521 NW2d 797 (1994) ("[T]here exists no structural differences with regard to the right to assistance of counsel between federal and Michigan provisions.").

In failing to object to the last portion of the police officer's body camera recording, defense counsel's performance fell below an objective standard of reasonableness. Defense counsel should have raised this objection for two reasons. First, the body camera recording was unfairly prejudicial and had little (if any) probative value, rendering it inadmissible under MRE 403. Second, the content of this portion of the recording had no relationship to the res gestae of the charged offense.

MRE 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

"All evidence offered by the parties is 'prejudicial' to some extent, but the fear of prejudice does not generally render the evidence inadmissible. It is only when the probative value is substantially outweighed by the danger of unfair prejudice that evidence is excluded." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995). "Unfair prejudice" is "the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Fisher*, 449 Mich 441, 452; 537 NW2d 577 (1995) (quotation marks and citation omitted).

In this case, there is a single video depicting defendant in a combative and agitated state, rather than duplicative, cumulative videos of the same events from different officers' body cameras or vantage points, played one after the other. The objectionable portion of the recording begins with defendant being placed in the officer's patrol car after his arrest. During the trip from the location where defendant was arrested to the police station, defendant continually berates the officer. For approximately 20 minutes, defendant unleashes a barrage of profanity and accusations. However, during that period, defendant offers nothing that is probative of the charged offense beyond his denial that he hit the victim. Defendant stated: "you know I didn't do this," and "you know I didn't hit that bitch." He is not questioned by the officer, with the exception of questions attempting to determine if defendant had any medical conditions that needed to be addressed during his incarceration. Because the content of this portion of the recording has little probative value, other than defense counsel stating the video may be used for refreshing the testifying officer's memory "and so forth," and the video presented defendant in a negative light for an extended period, defense counsel should have objected to it on the grounds that it should have been excluded under MRE 403. That is, the video evidence likely injected considerations extraneous to the merits of the lawsuit by invoking the jury's anger or shock in response to defendant's behavior. See *id*.

The police body camera video recording was also not admissible as part of the res gestae of the crime. "Res gestae are the circumstances, facts and declarations which so illustrate and characterize the principal fact as to place it in its proper effect." *People v Bostic*, 110 Mich App 747, 749; 313 NW2d 98 (1981).

No inflexible rule has ever been, and probably one never can be, adopted as to what is a part of the res gestae. It must be determined largely in each case by the peculiar facts and circumstances incident thereto, but it may be stated as a fixed rule that included in the res gestae are the facts which so illustrate and characterize the principal fact as to constitute the whole one transaction, and render the latter necessary to exhibit the former in its proper effect. [*People v Kayne*, 268 Mich 186, 192; 255 NW 758 (1934) (quotation marks and citation omitted).]

Evidence meeting the definition of res gestae may be relevant and admissible. *People v Jackson*, 498 Mich 246, 268; 869 NW2d 253 (2015).

The portion of the police body camera video recording that follows defendant's arrest is not res gestae evidence. Although, to some extent, defendant's actions and demeanor are reflective of his mental state at the time of the offense, the actions depicted in the recording are not inextricably linked to the events of the offense. See *id*. at 266-267; see also *People v Delgado*, 404 Mich 76, 84; 273 NW2d 395 (1978). Defendant is agitated and hostile throughout the recording, but he does not address the offense beyond denying that it occurred. Because defendant's statements and actions are not inextricably linked to the offense, they are not res gestae evidence, and should not have been admitted on that basis.

Although defense counsel's failure to object to this evidence fell below the standard of reasonableness under prevailing professional norms, defendant does not show that the deficiencies in his counsel's performance were prejudicial to the outcome of the case.

As stated earlier, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland*, 466 US at 692. To establish prejudice, "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

There was significant evidence to show that defendant was guilty of the charged offense. This evidence included the victim's testimony, the victim's statements during the 911 call, the arresting officer's testimony, the victim's statement to the officer during the first few minutes of the police body camera video recording, the appearance of the victim's face on the recording, and the appearance of the victim's face in photographs entered into evidence. The victim testified that defendant punched her several times in the face, possibly breaking her nose. The arresting officer testified that his observation of the victim was that she had injuries to her face consistent with being punched in the manner described. The victim relayed this information to the officer when he arrived.

Moreover, the victim testified that defendant assaulted her on two prior occasions by striking her in the face. The police were contacted after each altercation. Such testimony, as the trial court held, was admissible not only for limited MRE 404(b) purposes but "for any purpose for which it [was] relevant." MCL 768.27b(1). Thus, the jury was able to infer that defendant had a propensity to assault the victim by striking her in the face, which was strong evidence of guilt in this case. See *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010) ("[I]n cases of domestic violence, MCL 768.27b permits evidence of prior domestic violence in order to show a defendant's character or propensity to commit the same act."). Consequently, we cannot conclude that there was a "reasonable probability" of a different outcome, but for defense counsel's deficiency. See *Strickland*, 466 US at 694. Defendant is not entitled to a new trial based on the admission of the body camera evidence.

### III. FAILURE TO STRIKE JUROR

Defendant next argues that his trial counsel was ineffective when he failed to dismiss a potentially impartial juror and that this failure entitles him to a new trial or a remand for an evidentiary hearing. We disagree.

A defendant in a criminal trial has a constitutional right to be tried by an impartial jury. US Const Ams VI and XIV; Const 1963, art 1, § 20; *People v Miller*, 482 Mich 540, 547; 759 NW2d 850 (2008). "Jurors are presumptively competent and impartial, and the party alleging the disqualification bears the burden of proving its existence." *People v Johnson*, 245 Mich App 243, 257; 631 NW2d 1 (2001). "A juror's promise to keep the matters of her personal life separate from defendant's case [is] sufficient to protect defendant's right to a fair trial." *Id*. Jurors are not required to be "totally ignorant of the facts and issues involved" in a particular case. *People v Jendrzejewski*, 455 Mich 495, 519; 566 NW2d 530 (1997). "[T]he value protected by the Fourteenth Amendment is lack of partiality, not an empty mind." *Id*.

During voir dire, a prospective juror indicated that she had been a victim of domestic violence 15 years prior and that this experience may affect her ability to be a juror. This prospective juror was part of the jury that found defendant guilty. The prospective juror also indicated that she could set aside her bias and render a fair verdict. When asked if she would follow the law and accord defendant the presumption of innocence, the prospective juror stated, "I would. It may be a little hard, but I would." These assurances were accepted by the trial court, as shown by the fact that she was not removed from the jury panel. And they provide sufficient basis to afford the juror the presumption that she is impartial. *Johnson*, 245 Mich App at 257. Defendant has provided no other evidence indicating that this juror was biased against him.

Further, defense counsel engaged in a thoughtful voir dire that indicates sound trial strategy. For example, among several other questions, he asked the prospective jurors whether any one of them would be biased against an individual who "uses course language or swear words"; whether any one of them would be more likely to believe a statement by one particular gender; whether any one of them would be more likely to believe a statement by a police officer as opposed to a private citizen; and whether any one of them would be more or less likely to believe a statement by someone who is better dressed. None of these questions elicited a negative response. He also, for example, carefully explained the concept of "reasonable doubt" and inquired whether any prospective juror would have trouble applying such a concept to the case.[2] We therefore respectfully disagree with the dissent that defense counsel suggested to the jury that he "was not paying attention" and that "the trial did not really matter" to him, and thus do not find his voir dire performance constitutionally deficient.[3]

---

[2] The dissent invites readers of her dissent to "judge" for themselves whether defense counsel "carefully explained" the concept of reasonable doubt to the prospective jurors. The relevant judging, however, already has been performed by the judges of this Court pursuant to the governing standard of review, *People v Trakhtenberg*, 493 Mich 38; 826 NW2d 136 (2012), which requires this Court to "review[] de novo questions of constitutional law." *Id*. at 47.

[3] We also respectfully disagree with the dissent's discussion of *Strickland* prejudice in this context. The dissent accurately quotes from *Hughes v United States*, 258 F3d 453, 463 (CA 6, 2001), to the effect that "[t]he seating of a biased juror who should have been dismissed for cause requires reversal of the conviction." However, the dissent overlooks the key premise of *Hughes* that "[t]o maintain a claim that a biased juror prejudiced him [under *Strickland*], . . . Petitioner must show

## IV. WAIVER OF CLOSING ARGUMENT

Defendant next argues that defense counsel's decision to waive closing argument deprived him of the effective assistance of counsel. We disagree.

Defense counsel is given "wide discretion in matters of trial strategy because counsel may be required to take calculated risks to win a case." *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). We cannot substitute our judgment for that of counsel regarding matters of trial strategy or assess counsel's performance with the benefit of hindsight. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). Defense counsel's decision to waive closing argument is a matter of trial strategy that we ordinarily will not question. *People v Burns*, 118 Mich App 242, 248; 324 NW2d 589 (1982).[4] Indeed, MCR 2.507(E) makes it very clear that parties may rest

---

that the juror was actually biased against him." *Id*. at 458 (cleaned up). See also *Miller v Francis*, 269 F3d 609, 616 (CA 6, 2001) ("Because Miller's claim of ineffective assistance of counsel is founded upon a claim that counsel failed to strike a biased juror, Miller must show that the juror was actually biased against him."); *Goeders v Hundley*, 59 F3d 73, 75 (CA 8, 1995) ("Goeders' claim of ineffective assistance of counsel is grounded in the claim that counsel failed to strike a biased juror. To maintain a claim that a biased juror prejudiced him, however, Goeders must show that the juror was actually biased against him.").

Notably, the dissent provides no authority for the proposition that *Strickland* prejudice in this context may be shown by the failure to challenge a *possibly* biased juror. In the absence of such authority, we cannot conclude that defendant is entitled to a new trial because the prospective juror at issue was possibly biased.

[4] The dissent takes exception with our reference to this case because it was published before November 1, 1990, and thus, the dissent says, it is nonbinding. There are two court rules that address the precedential effect of a Court of Appeals decision. MCR 7.215(C)(2) states that "[a] published opinion of the Court of Appeals has precedential effect under the rule of stare decisis." MCR 7.215(J)(1) states that "[a] panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule." MCR 7.215(J)(1) does not state that this Court's decisions before November 1, 1990, are not binding precedent. It specifies only that we are required to follow a rule of law established by a written opinion by this Court after that date. Further, as this Court stated in *Andrusz v Andrusz*, 320 Mich App 445, 457 n 2; 904 NW2d 636 (2017), published opinions of the Court of Appeals, regardless of their publication date, always have been binding on trial courts. In *People v Kroll*, 179 Mich App 423, 426; 446 NW2d 317 (1989), this Court explained a published opinion of this Court has precedential effect under the rule of stare decisis. MCR 7.215(C)(2). As such, a trial court is constrained to follow a decision by any panel of this Court unless it is contradicted by another panel or overruled by our Supreme Court. *Kroll*, 179 Mich App at 426, citing *In the Matter of Hague*, 412 Mich 532, 552; 315 NW2d 524 (1982); *Moorhouse v Ambassador Ins Co*, 147 Mich App 412, 417; 383 NW2d 219 (1985). See also *Tebo v Havlik*, 418 Mich 350, 362; 343 NW2d 181 (1984) ("A decision by any panel of

their case without a closing argument. See *People v Gore*, 25 Mich App 700; 181 NW2d 654 (1970).

Here, the record reflects several valid reasons for defense counsel to waive closing argument. First, defense counsel effectively impeached the victim's testimony, and a closing argument further criticizing the victim may have backfired and evoked the jury's sympathy for her. Second, waiving closing argument may have conveyed to the jury defense counsel's belief that the prosecution had not proven its case beyond a reasonable doubt. Third, given that the prosecution directed a substantial part of its closing argument to addressing the question, "Who has the motive to lie?", it strikes us as quite reasonable for defense counsel to allow the jury to answer that question for itself and not open the door to rebuttal. See MCR 2.507(E) ("The party who commenced the evidence is entitled to open the argument and, if the opposing party makes an argument, to make a rebuttal argument not beyond the issues raised in the preceding arguments.").[5] Had defense counsel given a closing argument to the effect that the victim had the motive to lie, he would have opened the door for a rebuttal once again directly attacking defendant's credibility.

Moreover, defendant fails to show how defense counsel's decision prejudiced the outcome of his case. The trial court instructed the jury: "[W]hen you discuss the case and decide on your verdict, you're only allowed to consider the evidence that was properly admitted in the trial . . . . The lawyers' statements and their arguments are not evidence, they're only meant to help you understand their respective viewpoints of legal theories." As discussed earlier, substantial evidence was presented to the jury to show that defendant was guilty of domestic assault beyond a reasonable doubt. This evidence included the victim's testimony that defendant assaulted her in a similar manner on two prior occasions,[6] the photographs of her injuries from the instant assault, and her testimony about the instant assault itself. Therefore, defendant's argument that defense counsel's decision to waive closing argument entitles him to a *Ginther* hearing lacks merit.[7]

---

the Court of Appeals is, therefore, controlling statewide until contradicted by another panel of the Court of Appeals or reversed or overruled by this Court.").

[5] Although MCR 2.507(E) is located in the chapter of the court rules concerning civil procedure, MCR 2.001 *et seq.*, MCR 6.001(D) provides that "[t]he provisions of the rules of civil procedure apply to" criminal cases absent certain exceptions that are not relevant here. See, e.g., *People v Stimage*, 202 Mich App 28, 32; 507 NW2d 778 (1993) (applying MCR 2.507(A) to a criminal case).

[6] During his testimony, defendant acknowledged that after the June 2012 incident, he pleaded guilty to an offense "for taking the phone away from her when she was trying to call the police," and after the May 2013 incident, he pleaded guilty to an offense as a result of the victim's allegation that he struck her in the face. Although his testimony was not entirely clear, it was apparent to the jury that at least one of those offenses was domestic violence.

[7] According to the dissent, a *Ginther* hearing is warranted on this issue "to find out why counsel waived argument." However, MCR 2.507(E) provides that "[a]fter the close of all the evidence, the parties may rest their cases with *or without* final arguments." [Emphasis added.] The dissent

## V. SHACKLED DEFENDANT

Defendant next argues that the trial court abused its discretion and violated his due-process rights by requiring him to be shackled during the trial. Because the record evidence is unclear regarding whether defendant was required to be shackled during the trial or whether the jury ever saw defendant in restraints, we disagree.

We review a decision to restrain a defendant for an abuse of discretion under the totality of the circumstances. *People v Dixon*, 217 Mich App 400, 404–05; 552 NW2d 663, 668 (1996). "But even if a trial court abuses its discretion and requires a defendant to wear restraints, the defendant must show that he suffered prejudice as a result of the restraints to be entitled to relief." *People v Payne*, 285 Mich App 181, 186; 774 NW2d 714 (2009). If the jury was unable to see the defendant's restraints, then the defendant was not prejudiced. *Id*.

The record in this case is unclear as to whether defendant was actually shackled or otherwise restrained during the trial. At the very beginning of the first day of trial, defendant's attorney requested that defendant's chains be removed. The trial court's reply was: "[T]hat's up to the sheriffs."[8] Defendant added, "I'm not going anywhere." The record is silent on the issue of restraints from that point forward. There are no indications that the restraints were removed, nor are there any further requests to do so; likewise, there is no indication that defendant remained restrained.[9] More importantly, the record does not mention whether the jurors were ever able to see defendant wearing restraints.[10] Defendant argues that we should presume that defendant was

---

would apparently hold that a defense attorney may act in accordance with an applicable court rule, but the mere fact of doing so exposes him or her to a *Ginther* hearing for possible ineffective assistance of counsel. In other words, the dissent would apparently hold that in any case in which a defense attorney waives closing argument—or at least in any such case where the evidence against the defendant is not overwhelming—the defense attorney must give a closing argument or be forced to defend the decision otherwise at a *Ginther* hearing. We decline to decide today that a defense attorney's compliance with an applicable court rule automatically entitles the defendant to a *Ginther* hearing.

[8] Deferring to the sheriffs on this matter reflected an incorrect understanding of the law. "[A] defendant in a criminal case should not be subjected to physical restraint while in court unless the judge, for reasons entered on the record, finds such restraint reasonably necessary to maintain order." *People v Dunn*, 446 Mich 409, 426; 521 NW2d 255 (1994). It was therefore only permissible to subject defendant to restraints if the trial court itself found that doing so was warranted.

[9] Indeed, at one point during the first day of trial, defendant was excused to use the bathroom without any suggestion that he was restrained.

[10] During voir dire, defense counsel observed for the prospective jurors that defendant was "in his jail blues." The jury was thus at least aware that defendant was incarcerated at the time of trial. While this fact alone would not necessarily render any error harmless, courts have routinely recognized that the effect on the jury is a central consideration in assessing whether the defendant was prejudiced by the restraints. See, e.g., *People v Johnson*, 160 Mich App 490, 493; 408 NW2d

shackled, that the jury saw this, and that defendant was therefore prejudiced.  However, without record evidence, it is not possible to determine that the trial court actually abused its discretion in any way, that the jury saw defendant wearing restraints, or that there was any prejudice to the jury.

## VI.  CONCLUSION

Defendant has not demonstrated that he is entitled to relief.  Although defense counsel was deficient for failing to object to the admission of the majority of the video evidence, defendant has not demonstrated that he was prejudiced by this error.  Additionally, defendant's other claims that defense counsel rendered ineffective assistance at trial are without merit.  Accordingly, we affirm.

/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan

---

485 (1987) ("While we do not believe that the trial court justified the use of leg restraints during trial since there was no indication on the record before us that defendant was an escape risk or a safety risk, we also believe that the trial court's finding that the jury was unable to see those restraints rendered any error by the trial court harmless.").