C O U R T   O F   A P P E A L S

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DERRELL DIONTAE-VONCHAI EVANS, a/k/a
DERRELL DENO EVANS, a/k/a DARRELL
DEVONTE EVANS,

        Defendant-Appellant.

UNPUBLISHED
January 19, 2016

No. 322319
Washtenaw Circuit Court
LC No. 13-000930-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DERRELL DIONTAE-VONCHAI EVANS, a/k/a
DERRELL DENO EVANS, a/k/a DARRELL
DEVONTE EVANS,

        Defendant-Appellant.

No. 322320
Washtenaw Circuit Court
LC No. 13-001361-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DERRELL DIONTAE-VONCHAI EVANS, a/k/a
DERRELL DENO EVANS, a/k/a DARRELL
DEVONTE EVANS,

        Defendant-Appellant.

No. 322321
Washtenaw Circuit Court
LC No. 13-001384-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DERRELL DIONTAE-VONCHAI EVANS, a/k/a
DERRELL DENO EVANS, a/k/a DARRELL
DEVONTE EVANS,

Defendant-Appellant.

No. 322322
Washtenaw Circuit Court
LC No. 13-001472-FH

Before: SHAPIRO, P.J., and O'CONNELL and BORRELLO, JJ.

PER CURIAM.

In these consolidated appeals, defendant, Derrell Diontae-Vonchai Evans, appeals as of right his convictions, following two jury trials, of one count of fourth-degree arson, MCL 750.75, and three counts of witness tampering, MCL 750.122. The trial court sentenced defendant to serve concurrent terms of 84 months' to 20 years' imprisonment for his arson conviction (Docket No. 322319), 48 months' to 180 months' imprisonment for his first witness tampering conviction (Docket No. 322320), and 100 months' to 15 years' imprisonment for his second witness tampering conviction (Docket No. 322322), and a consecutive term of 76 months' to 20 years' imprisonment for his third witness tampering conviction (Docket No. 322321). We affirm defendant's convictions but remand for resentencing.

I. FACTUAL BACKGROUND

Defendant's offenses were tried in two trials. The first trial involved arson and associated witness tampering. According to Shontelle Frey, she had a contentious dating relationship with defendant that ended in May 2013. Defendant threatened to blow up her car, and Frey's car exploded on May 28, 2014. Investigators located some of defendant's belongings at the scene. Frey testified that after a previous argument with defendant, he told her that she was "not going nowhere" and she later discovered that her car's tires were slashed. Defendant's second girlfriend, Shavonne Perry, testified that when she broke up with defendant, he punched holes in the walls of her apartment. The trial court admitted a phone call from jail in which defendant admonished Perry for cooperating with the police and instructed her to recant her testimony.

Washtenaw County Sheriff Deputy Dan Buffa testified that he found broken headphones on the street near the vehicle during his investigation. Fire marshal Vic Chevrette testified that because the headphones were burned, it was likely that whoever was close to the vehicle had been ignited. On June 1, 2014, defendant texted someone that he was "got burnt earlier." Defendant testified that he used the phrase as slang for contracting a sexually transmitted disease.

-2-

Frey testified that defendant called her in June and threatened to blow up her house and kill her, her son, her mother. Defendant called Frey from jail a second time to ask if she was going to court. Frey testified that she received a letter from Ron White, the father of her son, which was in defendant's handwriting. White testified that Kelvin Jones asked him to send the letter to Frey. The letter stated in pertinent part, "If you love your baby mama, you better get that b****. If she come to court on me on the 17th, I'm going to take that year they trying to give me, and when I come home, I'm killing that b****."

Defendant's second trial involved an assault and associated witness tampering. According to Freddie Acklin, on April 4, 2013, he was a trained auto mechanic. When Acklin's friend Marchal Seuell arrived at Acklin's shop so that Acklin could fix the brakes of his car, defendant was with him. Acklin's puppy was in his shop. Defendant asked to buy the puppy, but Acklin refused. Acklin agreed to fix Seuell's brakes and accept part of the payment later. However, after Acklin fixed the car, defendant struck Acklin in the mouth with the gun and said that they were not paying him and were taking his puppy. The men left with Acklin's puppy. Washtenaw County Sheriff's Deputy Joseph Montgomery testified that defendant and the puppy were both in Acklin's car when police stopped it. Officers returned Acklin's puppy, but his teeth were loosened in the assault and he required extensive dental work.

Acklin testified that while defendant was on bond, defendant confronted him at a store where he worked. Acklin fled and called the police. Defendant approached him a second time at a gas station and offered him $400 "to not come to court." After that, different men approached him several times and offered him money if he refused to testify against defendant. Detective Craig Raisanen testified that during several phone calls defendant made from jail, he discussed having someone contact "Fred" and convince him not to come to court. The phone calls were admitted into evidence.

The jury found defendant guilty as previously described. The jury also acquitted defendant of an additional count of witness tampering in the assault case. Defendant now appeals, but he does not appeal his convictions of armed robbery, felonious assault, and weapons offenses from the assault case.

## II. EVIDENTIARY ISSUES

Defendant raises several issues regarding the evidence admitted in his trials, both through counsel and through his pro se brief filed pursuant to Michigan Supreme Court Order 2004-6, Standard 4. This Court reviews for an abuse of discretion the trial court's decisions regarding the admission of evidence and review de novo the preliminary questions of law surrounding that decision. *People v Dobek*, 274 Mich App 58, 84-85; 732 NW2d 546 (2007). The trial court abuses its discretion when its outcome falls outside the principled ranges of outcomes. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

### A. OTHER ACTS EVIDENCE

First, defendant contends that the trial court improperly admitted evidence that he punched a hole in Perry's wall and previously damaged Frey's car because this evidence was not relevant and was more prejudicial than probative.

Generally, MRE 404(b)(1) prohibits a party from introducing evidence of another party's other crimes, wrongs, or acts to prove that person's propensity to engage in a type of action. However, MCL 768.27b(1) provides that "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of a defendant's commission of other acts of domestic violence is admissible for any purposes for which it is relevant if it is not otherwise excluded under [MRE 403]." The intent of this statute is to provide the jury with a complete picture of the defendant's history to help it determine the likelihood that the defendant committed a crime. *People v Cameron*, 291 Mich App 599, 609-610; 806 NW2d 371 (2011).

This statute "permits the admission of evidence that MRE 404(b) precludes," but the trial court must still weigh the probative value and prejudicial effect of the evidence under MRE 403. See *People v Watkins*, 491 Mich 450, 469-470, 486; 818 NW2d 296 (2012) (discussing the analogous provision MCL 768.27a). Propensity evidence weighs in favor of the evidence's probative value, not against it. *Id*. at 487. Whether evidence is unduly prejudicial depends on

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Id*. at 487-488.]

In this case, the circumstances of each instance were similar. Defendant was in a dating relationship with each of the women involved in the other acts. Before each instance, defendant argued with a girlfriend on the phone and subsequently destroyed a piece of the girlfriend's property. The evidence showed that defendant had a pattern of conduct that involved physically intimidating women who opposed him in a dating relationship by destroying their property. We conclude that this was permissible evidence of defendant's propensity to act violently against women who opposed him in romantic relationships. See *Cameron*, 291 Mich App at 612.

In his pro se brief, defendant contends that the admission of this evidence constituted prosecutorial misconduct. We review unpreserved issues of prosecutorial misconduct for plain error affecting the defendant's substantial rights. *People v Pfaffle*, 246 Mich App 282, 288; 632 NW2d 162 (2001); *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error is plain if it is clear or obvious, and the error affected the defendant's substantial rights if it affected the outcome of the lower court proceedings. *Id*. However, for evidentiary issues framed as prosecutorial misconduct, we review "whether the prosecutor elicited the testimony in good faith." *Dobek*, 274 Mich App at 70-71.

In this case, as previously discussed, the evidence was permissible other acts evidence. The prosecutor may permissibly elicit admissible evidence. We conclude that the prosecution did not commit misconduct by eliciting the other acts evidence in this case.

Defendant additionally contends that trial counsel was ineffective for failing to challenge this evidence. A defendant must move the trial court for a new trial or evidentiary hearing to preserve a claim that his or her counsel was ineffective. *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). When the trial court has not conducted a hearing, our review is limited

to mistakes apparent from the record. *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005). In this case, the record simply fails to support defendant's assertion that counsel did not challenge the evidence—trial counsel did in fact challenge the evidence in a pretrial motion, but the court overruled counsel's objection.

## B. OPINION TESTIMONY

In his pro se brief, defendant contends that Detective Raisanen's opinion testimony regarding his eyebrows and arm scars was improper. We disagree.

Lay witnesses may offer opinion testimony if it is "rationally based on the perception of the witness and . . . helpful to a clear understanding of the witness' testimony or the determination of a fact at issue." MRE 701. A police officer's opinion testimony is admissible as a lay opinion if the officer bases his or her opinion on direct perceptions, rather than on a technical or scientific analysis. *People v Daniel*, 207 Mich App 47, 57; 523 NW2d 830 (1994).

In this case, Detective Raisanen testified that he had reviewed photographs of defendant that he believed showed defendant with thinner eyebrows and arm scars that were not present in his previous photographs. Detective Raisanen testified on the basis of his observation of the photographs rather than on the basis of a technical or scientific analysis. Additionally, it was helpful to the jury's determination of a fact in issue because Chevrette testified that the person who committed the arson was likely burned during it, and a change in defendant's physical appearance supported an inference that he was the arsonist.

We conclude that this opinion testimony was admissible. We also conclude that, because the evidence was admissible, trial counsel was not ineffective for failing to challenge it. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) (counsel need not make futile challenges).

Next, defendant contends that Detective Raisanen's statements regarding the recorded telephone calls were improper opinion testimony that invaded the province of the jury. Again, defendant frames this evidentiary issue was one of prosecutorial misconduct. We conclude that the prosecutor did not act in bad faith regarding this evidence.

The prosecutor asked Detective Raisanen about the contents of the recorded telephone calls that defendant made from jail. Raisanen testified that certain aspects of the phone calls gave him "some pause." Detective Raisanen then testified about how he acted based on what he thought he heard. Detective Raisanen's testimony was based on his own perceptions and provided the context for his actions. We conclude that this testimony was permissible lay opinion testimony, and the prosecutor did not commit misconduct by seeking to elicit it.

## C. EVIDENCE OF OTHER CRIMES

In his pro se brief, defendant contends that admission of testimony related to the later substantive trials in his witness tampering cases constituted prosecutorial misconduct. Again, defendant frames an evidentiary issue as one of prosecutorial misconduct.

Evidence may be relevant even when it does not pertain to an element of an offense, as long as it pertains to a matter in controversy. *People v McGhee*, 268 Mich App 600, 637; 709 NW2d 595 (2005). The res gestae of a crime are the facts and circumstances surrounding the commission of the crime. *People v Delgado*, 404 Mich 76, 83; 273 NW2d 395 (1978). "Evidence of other criminal acts is admissible when so blended or connected with the crime of which defendant is accused that proof of one incidentally involves the other or explains the circumstances of the crime." *Id*.

In this case, evidence of the crimes underlying witness tampering charges—the crimes for which defendant was attempting to convince the witnesses not to testify—did not directly pertain to the elements of witness tampering. However, the underlying crimes were among the circumstances that led to the witness tampering charges and explained the later charges. We conclude that the prosecution did not commit misconduct by admitting this res gestae evidence in good faith.

Defendant also contends that he was deprived of a fair trial when the prosecution elicited from Detective Raisanen during his assault trial that he became acquainted with defendant during an arson investigation. During the assault case, the following exchange occurred between the prosecutor and Detective Raisanen:

> *Q*. And, what is the basis—what is the original crime that took place that you were—that you were investigating this witness intimidation on? What is the underlying crime?
>
> *A*. Well, I became—I became involved in this investigation after dealing with an arson investigation involving [Evans].
>
> *Q*. And, so what about the—the—background that you're here to testify on today regarding—is that regarding an armed robbery or the intimidation that took place in the course of the armed robbery?
>
> *A*. That's part of the overall investigation, yes. When I was investigating the arson that [Evans] was believed—
>
> *Defense counsel*. You Honor, I'm going to object. He's—he's testifying to a case that is currently going to be tried. That's—you know I don't know as he can go into what results of his investigation in an arson complaint are.
>
> *Prosecutor*. And, certainly, we're going to ask the detective that, Your Honor. Just—he is the officer in charge overall and so—of that portion of the case and so we're—I'm just getting—getting context to his testimony as to where it's going to come from. We can proceed forward.
>
> *The Court*. All right. Thank you.
>
> *Prosecutor*. Thank you.

*Q.* Detective, at some point did you start an investigation of a witness interference or bribery on the armed robbery case that happened out of Ypsilanti Police Department.

*A.* Yes, I did.

In this case, Detective Raisanen's answer regarding the arson investigation was not responsive to the prosecutor's question regarding the underlying crime of the witness intimidation. Instead, the prosecutor actively sought to redirect Detective Raisanen to the armed robbery case. We conclude that the prosecutor sought in good faith to admit relevant evidence, and her actions did not constitute misconduct. Additionally, we conclude that trial counsel's representation did not fall below an objective standard of reasonableness when counsel successfully challenged the statement. See *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012).

Defendant contends that his counsel's statement that the arson case "is currently going to be tried" alone warrants reversal. We disagree. Reversal is only warranted if this reference affected the outcome of defendant's proceedings. See *People v Garza*, 246 Mich App 251, 255; 631 NW2d 764 (2001). Even if the jury inferred from this statement that defendant was also charged in an arson case, rather than that he was simply a witness or suspect in the case, we conclude that any character inference the jury could have drawn from that fact was minimal. The reference was very brief, defense counsel noted that the case had not yet been tried, and the jury was repeatedly instructed throughout the trial that the criminally accused are innocent until proven guilty. We also note that the jury acquitted defendant of an additional witness intimidating claim and found defendant guilty only of the lesser offense of simple assault, not the greater offense of felonious assault, which tends to indicate that the jury weighed specific evidence in the case instead of simply convicting defendant on the belief that he was a bad person. We are not convinced that the brief reference to the arson case deprived defendant of a fair trial or prejudiced the jury against him.

## III. PROSECUTORIAL MISCONDUCT

In his pro se brief, defendant contends that the prosecution committed other instances of misconduct. Specifically, defendant contends that the prosecutor made improper closing arguments.

A prosecutor can deny a defendant's right to a fair trial by making improper remarks that infringe on a defendant's constitutional rights or by making remarks that "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v DeChristoforo*, 416 US 637, 643; 94 S Ct 1868; 40 L Ed 2d 431 (1974). We must evaluate instances of prosecutorial misconduct on a case-by-case basis, reviewing the prosecutor's comments in context, and in light of the defendant's arguments and the evidence presented in the case. *Dobek*, 274 Mich App at 64.

We have reviewed the prosecutor's closing statements in this case and conclude that the prosecutor permissibly commented on the evidence. In closing, a prosecutor may argue all the facts in evidence and all reasonable inferences arising from them, as they relate to the

prosecution's theory of the case. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). In this case, not only was evidence of defendant's other acts of domestic violence admissible as we have previously discussed, but defendant also admitted on the stand that he damaged Perry's walls. Similarly, the instances of defendant's prior actions toward Frey's car were also facts in evidence in this case. The prosecutor permissibly argued these facts as they related to her theory of the case.

We conclude that defendant's challenge to the prosecution's closing statements lack merit. Further, trial counsel was not ineffective for failing to make a futile challenge to these permissible arguments. See *Ericksen*, 288 Mich App at 201.

## IV. SUFFICIENCY OF THE EVIDENCE

In his pro se brief, defendant contends that the evidence was insufficient to convict him of witness intimidation of Frey. We disagree.

This Court reviews de novo a defendant's challenge to the sufficiency of the evidence. *People v Cline*, 276 Mich App 634, 642, 741 NW2d 563 (2007). We view "the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *Id.* (quotation marks and citation omitted). We must resolve conflicting evidence in favor of the prosecution, *People v Terry*, 224 Mich App 447, 452; 569 NW2d 641 (1997), and we will not resolve questions of credibility on appeal, *People v Avant*, 235 Mich App 499, 506; 597 NW2d 864 (1999).

MCL 750.122(3) prohibits a defendant from using threats or intimidation to "[d]iscourage or attempt to discourage any individual from . . . testifying at a present or future official proceeding . . ." or to "[e]ncourage or attempt to encourage any individual to . . . withhold testimony . . . ." The purpose of this statutory section is to "criminalize the many ways individuals can prevent or attempt to prevent a witness from appearing and providing truthful information in some sort of official proceeding . . . ." *People v Greene*, 255 Mich App 426, 438; 661 NW2d 616 (2003).

In this case, viewing the evidence in the light most favorable to the prosecution, the testimony and documentary evidence established that defendant wrote a letter to White, the father of Frey's child, in which defendant sought to discourage Frey from testifying by use of threats. Specifically, defendant asked White to convince Frey not to testify if he loved her because if she testified, defendant would kill her when he got out of jail. There is no question that defendant's letter constituted a threat that encouraged Frey to withhold testimony. While defendant contends that the letter was not in his handwriting, a rational jury could have believed Frey's testimony that the letter was, in fact, in defendant's handwriting, and we will not reevaluate Frey's credibility on appeal.

We conclude that sufficient evidence supported defendant's conviction of witness tampering regarding Frey.

## V. SENTENCING

Through counsel, defendant next contends that the trial court erroneously scored offense variable (OV) 10 in his arson-related cases and that he is entitled to a remand for resentencing under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). We agree.

This Court reviews the sentencing court's scoring of a sentencing guidelines variable for clear error. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). We review de novo the proper interpretation and application of the sentencing guidelines. *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004).

The trial court properly assesses 10 points for OV 10 if a defendant exploited a domestic relationship with the victim. MCL 777.40(1)(b). A "domestic relationship" is "a familial or cohabitating relationship." *People v Jamison*, 292 Mich App 440, 447; 807 NW2d 427 (2011). However, a former dating relationship is not a domestic relationship. *People v Brantley*, 296 Mich App 546, 554; 823 NW2d 290 (2012).

In this case, the trial court assessed 10 points for OV 10 on the basis that defendant and Frey were in a domestic relationship. However, Frey testified that she had broken up with defendant before he blew up her car, and there is no indication that Frey resumed the relationship. We conclude that the trial court erroneously determined that defendant exploited a domestic relationship for the purposes of OV 10. However, regarding the witness tampering conviction involving Perry in Docket No. 322321, we conclude that the trial court properly assessed 10 points under OV 10. A letter indicated that Perry was pregnant with defendant's child and, accordingly, there was evidence that Perry and defendant had a familial relationship.

The prosecution contends that resentencing is not required because defendant's sentence was reasonable. We disagree. The trial court explicitly stated its intent to sentence defendant within the guidelines. A 10-point reduction in defendant's OV score alters his sentencing grid. See MCL 777.64 and MCL 777.66. The trial court could not properly exercise its discretion because it was operating on the erroneous belief that its sentence was within defendant's guidelines. See *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). Accordingly, we conclude that resentencing is required in Docket Nos. 322319 and 322322.

Regarding Docket Nos. 322320 and 322321, the prosecution concedes that defendant is entitled to a remand for further proceedings under *Lockridge*. Accordingly, we remand for further proceedings pursuant to *United States v Crosby*, 397 F3d 103 (CA 2, 2005). *Lockridge*, 498 Mich at 395.

Finally, in his pro se brief, defendant contends that the trial court erred by ordering $2,500 restitution in his witness tampering case involving Acklin rather than in his assault case. This issue is unpreserved, and we review it for plain error.

In *People v McKinley*, 496 Mich 410; 852 NW2d 770 (2014), the Michigan Supreme Court stated that

> [d]epending on the nature and circumstances of the offense, a single act of "conduct" may be sufficient to give rise to the offense, or a series of acts—i.e. a course of conduct"—may be necessary. For example, a defendant may be assessed restitution for a conviction for assault with a deadly weapon for firing a

gun at a victim and may be required to pay the victim's resulting medical bills, or a defendant may be assessed restitution for a conviction for armed robbery for firing a gun at a victim and taking the victim's money and be required to pay the victim's medical bills and repay the money taken from the victim. The latter example involves a "course of conduct" that gives rise to a conviction, and both the defendant's assault and his theft could result in a restitution award under our decision today. [*Id.* at 420 n 10.]

In this case, the trial court did not clearly err in assessing restitution for Acklin's injuries in the witness tampering case. That case involved a course of conduct arising out of Acklin's assault because without the assault, defendant had no reason to tamper with Acklin's testimony. We conclude that the trial court did not plainly err by ordering restitution for defendant's witness tampering conviction involving Acklin.

## VI. CONCLUSION

We affirm defendant's convictions. In Docket Nos. 322319 and 322322, we remand for resentencing. In Docket Nos. 322320 and 322321, we remand for the trial court to determine whether it would have imposed a materially difference sentence under the sentencing procedure described in *Lockridge*.[1] We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Peter D. O'Connell
/s/ Stephen L. Borrello

---

[1] If the trial court determines that it would have imposed the same sentence absent the unconstitutional constraint on its discretion, it may reaffirm the original sentence. If it determines that it would not have imposed the same sentence, it may resentence defendant. *Lockridge*, 498 Mich at 399.