*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
August 1, 2024

v

No.  364695
Menominee Circuit Court
LC No.  22-004437-FH

GARY EUGENE NICOLL,

        Defendant-Appellant.

Before: CAMERON, P.J., and N. P. HOOD and YOUNG, JJ.

PER CURIAM.

Defendant, Gary Eugene Nicoll, appeals by right his conviction and sentence following a jury trial in which he was convicted of one count of second-degree fleeing and eluding, MCL 257.602a(4)(b), and two counts of resisting or obstructing a police officer, MCL 750.81d(1).  At a pretrial hearing, the trial court excluded evidence about the underlying bases for two warrants that were the genesis of the charges.  Nonetheless, at trial, ostensibly to prove the lawfulness of the arrests, the prosecution introduced an unredacted copy of a warrant for contempt of court in a felony breaking-and-entering case, an unredacted copy of a warrant for failing to appear in a domestic violence case, details about the aggravated nature of the domestic violence allegations, testimony about Nicoll's habit of failing to appear for court, and testimony regarding Nicoll's general criminal character.  The prosecution suggested, "[T]his is what . . . Gary Nicoll does?  Isn't it?  . . . He's a criminal [who] doesn't show up for court; is that correct?"  On appeal, Nicoll argues that this amounted to prosecutorial misconduct or that his counsel was ineffective for failing to object.  We agree that trial counsel's failure to object was deficient and that deficiency prejudiced the defense.  For these reasons, and those stated below, we vacate Nicoll's convictions and remand for a new trial.

## I. BACKGROUND

This case started with Menominee County Sheriff's deputies' attempts to stop and later arrest Nicoll.  While stopped at an intersection, a Menominee County Sheriff's deputy believed he saw Nicoll, whom he recognized from previous police interactions, drive past him.  The deputy contacted his central dispatch to determine whether Nicoll had any outstanding warrants, and

dispatch informed him that there was an outstanding felony bench warrant for Nicoll's arrest. He later learned that Nicoll also had an outstanding misdemeanor warrant for domestic violence. The deputy and his partner followed the vehicle and activated their vehicle's emergency lights and siren to attempt a traffic stop. But the driver did not stop or pull over, at least not right away. Rather, after approximately two miles, he pulled into a driveway that led to Nicoll's property.

Once on the property, the deputies followed the vehicle as it circled a barn. When they began to go around the barn a second time, the deputies stopped, staying in their vehicle. After a few seconds, they drove to the back of the barn where they saw someone running. One deputy drove past the person, and the other exited the patrol vehicle to look for him. The deputies called Nicoll's name and eventually, after approximately two minutes, Nicoll exited the barn. One deputy testified that he saw the person run in the direction of the location where they later found Nicoll. The other testified that he had no doubt that Nicoll was the person they saw running and the person he saw earlier driving the car.

The deputies ordered Nicoll to put his hands behind his back, but Nicoll did not comply, instead putting his hands into his pockets. Both deputies had concerns because of a prior incident in which Nicoll fought with police. Nicoll began to ask the deputies questions as they continued to tell him to put his hands behind his back. Nicoll failed to comply with police orders for several minutes before finally submitting to arrest.

Before trial, the trial court ordered that the bench warrants, which led to Nicoll's arrest were inadmissible. Shortly before trial, the prosecution filed an amended exhibit list which included the warrants. At a pretrial hearing, the prosecution argued that the warrants were admissible on what was essentially a res gestae theory: the warrants triggered the attempt to arrest Nicoll, which triggered the flight. The defense countered that the basis for the warrants underlying Nicoll's arrest were not relevant and unfairly prejudicial. The trial court agreed—at least, initially. It excluded certified copies of the bench warrants out of concern that each warrant "is going to have reference to the reason for the bench warrant," which in the words of the trial court, "has no relevancy to what we are going to trial on," namely, fleeing and eluding and resisting and obstructing. The court left open the possibility for introducing the warrants if the defense challenged the existence of the warrants.

At trial, the defense challenged one deputy's knowledge of the existence of a valid warrant. After reviewing a portion of the patrol car video, the defense questioned the deputy:

*Q*. Okay, and at this point, you haven't verified whether the warrant is valid or not, have you?

*A*. If it's a valid warrant?

*Q*. Whether the warrant is actually in existence.

*A*. The warrant is in existence, yes, at this point.

*Q*. But you hadn't been told that on dispatch.

*A*. I have.

The prosecution then moved to admit certified copies of the bench warrants, which the court received without objection from the defense. One warrant was a misdemeanor warrant for failing to appear for a pretrial conference in a domestic violence case. The other was a bench warrant holding Nicoll in contempt for failing to appear in a case involving breaking and entering a building with intent, a felony. The prosecutor questioned both deputies about Nicoll's domestic violence warrant. With one deputy, the prosecutor engaged in the following exchange:

> *Q*. And domestic violence, that is an assaultive crime; is that correct?
>
> *A*. Correct.
>
> *Q*. So when there's—he's got aggravated assault, domestic violence?
>
> [*Defense Counsel*]: Your Honor, I'm going to object. I don't think that this is relevant in that we're not talking about some other charge that has nothing to do with this case.
>
> [*The Prosecutor*]: I'm not even arguing this, Your Honor.
>
> [*The Court*]: I'm not sure what your question was going to.
>
> [*The Prosecutor*]: I'm saying the dispatch came over aggravated assault, and I can't remember if she said domestic violence at all, but domestic violence is aggravated—it can be assault or aggravated assaultive crime.
>
> [*The Court*]: You can ask him that question. That wasn't what you asked him, but if you rephrase it, you can ask it.
>
> By [*The Prosecutor*]:
>
> *Q*. Is that correct?
>
> *A*. Yes.

The prosecutor engaged in a similar exchange with the other deputy, emphasizing the aggravated nature of domestic assault.

On cross-examination, the deputy acknowledged that the misdemeanor warrant was for "failure to appear for pretrial" and that on the "felony warrant," there was a box checked indicating that Nicoll was "[h]eld in contempt for failure to appear." The defense attempted to elicit testimony that the domestic violence case was dismissed, but the prosecution objected, and the court sustained the objection.

On redirect, the prosecutor questioned the deputy about both warrants being for Nicoll's failure to appear in court, one of which resulted in contempt. He then elicited the following testimony:

> *Q*. So he doesn't appear in court when he's supposed to?

*A.* Correct.

*Q.* This type of activity, is this the type of activity—and you know [Nicoll]—why you called into dispatch when you saw him in the first place?

*A.* Correct.

*Q.* So that's what the Gary—Gary Nicoll does; isn't it?

*A.* That's what the warrants for were for.

*Q.* He's a criminal. He doesn't show up for court; is that correct?

*Q.* Correct.

No objection followed this exchange. There was likewise no limiting instruction or instruction to disregard character evidence.

After the close of evidence, the trial court instructed the jury. Prior to trial, the court gave oral instructions on the elements of second-degree fleeing and eluding. But at the close of trial, although it was contained in the written jury instructions, the trial court neglected to orally instruct the jury on the elements fleeing and eluding. After the instructions were read, the trial court asked whether there were any issues with the jury instructions as read, to which defense counsel responded: "No, Your Honor." The jury found Nicoll guilty on all counts, including second-degree fleeing and eluding. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Nicoll argues that the prosecutor engaged in misconduct warranting reversal by eliciting testimony about not only the validity of the warrants for his arrest, but their underlying basis, and Nicoll's general criminality and noncompliance with court orders. Relatedly, Nicoll argues that phhhh6he was denied effective assistance of counsel when his lawyer failed to object when the prosecutor elicited testimony contrary to the trial court's prior order or that was otherwise clearly objectionable. We agree that trial counsel was deficient for failing to object. The questioning and testimony was improper and violative of myriad rules of evidence. See, e.g., MRE 402 ("Irrelevant evidence is not admissible."); MRE 403 (excluding relevant evidence when its "probative value is substantially outweighed by the danger of . . . unfair prejudice, [or] confusing the issues . . ."); MRE 404(b) (prohibiting evidence of other crimes or wrongs to prove a person's character or show that a person acted in accordance with that character; providing the proper procedure for noticing and introducing other-acts evidence). Because the trial court had already prohibited its admission, and expressed the view that the underlying basis of the warrants was inadmissible, we discern no

valid strategy in defense counsel's decision not to object.[1] We also agree that trial counsel's deficient performance undermines this Court's confidence in the outcome.

As stated in *People v Otto*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 362161); slip op at 4:

> A claim of ineffective assistance of counsel involves a mixed question of law and fact. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). We review findings of fact, if any, for clear error. *Id.* "We review de novo the constitutional question whether an attorney's ineffective assistance deprived a defendant of his or her Sixth Amendment right to counsel." *People v Fyda*, 288 Mich App 446, 449-450; 793 NW2d 712 (2010). "Where the trial court has not conducted an evidentiary hearing, this Court's review is limited to mistakes apparent on the record." *People v Hughes*, 339 Mich App 99, 105; 981 NW2d 182 (2021) (quotation marks and citation omitted). Issues of statutory interpretation are reviewed de novo. *People v Ambrose*, 317 Mich App 556, 560; 895 NW2d 198 (2016).

"Both the Michigan and United States Constitutions guarantee criminal defendants the right to be represented by counsel." *Otto*, ___ Mich App at ___; slip op at 4, citing Const 1963, art 1, § 20; US Const, Am VI. "The constitutional right to counsel is not merely the right to have a lawyer stand or sit nearby; rather, a criminal defendant has the right to the effective assistance of counsel." *Otto*, ___ Mich App at ___; slip op at 4.

An ineffective-assistance-of-counsel claim has two parts: (1) deficiency and (2) prejudice. *Fyda*, 288 Mich App at 450. See also *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "To establish a claim of ineffective assistance of counsel a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense." *Fyda*, 288 Mich App at 450. Regarding the first prong, deficiency, "[t]rial counsel's performance is deficient when it falls below an objective standard of professional reasonableness." *Hughes*, 339 Mich App at 105. "When reviewing defense counsel's performance, the reviewing court must first objectively determine whether, in light of all the circumstances, the identified acts or omissions were outside of the wide range of professionally competent assistance." *Id.* at 105-106 (quotation marks and citation omitted). The second prong, prejudice, requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Leffew*, 508 Mich 625, 637; 975 NW2d 896 (2022) (quotation marks and citation omitted). "Reasonable

---

[1] Because we resolve this issue on Nicoll's ineffective-assistance-of-counsel claim, we need not address whether it was prosecutorial misconduct for the prosecutor to ask about the underlying basis for the warrants, i.e., domestic violence and contempt of court for failing to appear in a felony breaking-and-entering case, when the trial court previously concluded that the underlying basis for the warrant was not relevant and should not be admitted or for asking: "So he doesn't appear in court when he's supposed to?" "So that's what . . . Gary Nicoll does[?]" "He's a criminal[?]" "He doesn't show up for court; is that correct?"

probability means a probability sufficient to undermine confidence in the outcome." *Id*. at 637 (quotation marks and citation omitted).

## A. DEFICIENCY

Trial counsel was deficient for failing to object to the introduction of the bases of the underlying warrants, the prosecution's attempts to emphasize a prior unrelated domestic violence incident, the prosecution's characterization of the unrelated domestic violence as aggravated assault, and the prosecutor's character evidence questions: "So he doesn't appear in court when he's supposed to?" "So that's what . . . Gary Nicoll does[?]" "He's a criminal[?]" "He doesn't show up for court; is that correct?" Trial counsel was deficient because the questions and testimony related to the underlying basis for the warrants, his domestic violence history, and his general criminality were inadmissible. See MRE 402; MRE 403; MRE 404(a); MRE 404(b).

The prosecution introduced four groups of evidence for which Nicoll claims his attorney was ineffective for failing to object.[2] First, the prosecution introduced evidence that Nicoll had prior interactions with a deputy making the arrest. Second, the prosecution introduced warrants leading to Nicoll's arrest in this case.[3] Third, and relatedly, when introducing the warrants, the prosecutor introduced the bases for the warrants at issue in this case. The prosecutor first incorrectly elicited testimony that one warrant was for domestic violence or aggravated assault, and emphasized the aggravated nature of the alleged assault. The defense, and later the prosecution, clarified that both warrants were for failure to appear. This, however, led to the fourth group of evidence: character evidence of Nicoll's general criminality and noncompliance with court orders. To do so, the prosecutor and deputy engaged in the following exchange:

*Q*. So he doesn't appear in court when he's supposed to?

*A*. Correct.

*Q*. This type of activity, is this the type of activity—and you know [Nicoll]—why you called into dispatch when you saw him in the first place?

---

[2] Nicoll characterizes these evidentiary issues as two errors. Because they implicate different aspects of the Michigan Rules of Evidence, we recategorize these as four interrelated groups of evidence.

[3] Of the four groups of evidence at issue on appeal, the warrants were admissible. See *People v Washington*, unpublished per curiam opinion of the Court of Appeals, issued February 12, 2019 (Docket No. 336426), p 4 (concluding that warrants were admitted for the purpose of establishing a significant contested issue at trial: whether the officers were conducting a lawful arrest). A redacted copy of the warrant would directly address an element of each of Nicoll's charges: the lawfulness of the stop or arrest. See *id.* See also MCL 257.602a(4)(b); MCL 750.81d(1). The underlying bases for the warrants is a different matter. As explained later regarding the first group of evidence at issue, the fact that one deputy knew Nicoll, without saying how he knew him, bears on identification, and is also admissible. The remaining categories of evidence at issue were inadmissible for the reasons provided in this opinion.

*A.* Correct.

*Q.* So that's what . . . Gary Nicoll does; isn't it?

*A.* That's what the warrants for were for.

*Q.* He's a criminal. He doesn't show up for court; is that correct?

*Q.* Correct.

The defense did not object to this final exchange. On appeal, the prosecution concedes that it was improper but does not acknowledge why. The reason it is improper is critical. The last and most egregious line of questioning violated MRE 404(a)'s prohibition against improper character evidence. It also bookended a series of evidence regarding Nicoll's prior domestic violence and failures to appear in court (which is to say, failure to obey lawful orders), that also violated MRE 404(b). In fact, with the exception of the certified copies of the warrants, or some redacted form of the warrants, which bear on the lawfulness of the arrests, an element of each of the three charges, see MCL 257.602a(4)(b); MCL 750.81d(1), each piece of evidence that Nicoll identifies on appeal violates MRE 404(b)'s requirements for a proper purpose, proper notice, logical relevance, and an unacceptable risk of prejudice and confusion of the issues. The generalized character evidence of Nicoll's criminality and character for not complying with court orders also violated MRE 404(a)'s prohibition on character evidence.

## 1. TRIAL COUNSEL'S FAILURE WAS NOT STRATEGIC

At the outset, we cannot attribute trial counsel's failure to object to strategy or trial tactics. We acknowledge that Nicoll must overcome a strong presumption that counsel's performance constituted sound trial strategy. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). This Court will not substitute its judgment for that of trial counsel regarding matters of trial strategy. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). Counsel will only be found ineffective on the basis of a strategic decision if the strategy employed was not sound or reasonable. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007).

Here, there is no reasonable basis for counsel's decision not to object to the prosecution's efforts to introduce irrelevant and extremely prejudicial testimony, which, at its crescendo, tipped into unfettered character evidence about Nicoll's general criminality and possible commentary on the ultimate question of Nicoll's guilt. The clearest evidence that trial counsel's decision was not rooted in strategy is that the same attorney objected to the evidence at a pretrial hearing on its admissibility. Trial counsel objected to the admission of the warrants or their bases prior to trial. The trial court agreed that the underlying bases for the warrants were not admissible because they were not relevant to any material fact at issue in this trial. It permitted the admission of the warrants if the defense attacked the validity of the warrants. But it does not appear that happened. Rather, the defense questioned the deputy's knowledge of the existence of a valid warrant. The prosecution then used this line of questions to introduce irrelevant details regarding Nicoll's history of assault, failure to show up for court, and general propensity for crime. Putting aside the apparent irrelevance and unfair prejudice related to the unnoticed other-acts evidence and propensity evidence, the fact that the defense objected (even in general terms) to the admission of this evidence indicates that the decision not to object at trial was not strategic.

Further, if timely made, the trial court should have sustained the objections. See MRE 404(a). See also MRE 404(b); MRE 403. The most obvious defect is that, with the exception of the warrants, or a redacted copy of the warrants to show the validity of the arrests, the other three groups of evidence (i.e., Nicoll's unrelated domestic violence history, the underlying bases for the warrants, Nicoll's general criminality and propensity to commit crimes and disobey orders) violated MRE 404's prohibition of character evidence. See MRE 404(a); MRE 404(b). See also *People v Denson*, 500 Mich 385, 297-409; 902 NW2d 306 (2017). There is no valid strategy for allowing this sort of evidence.

## 2. THE PROSECUTION INTRODUCED IMPERMISSIBLE CHARACTER EVIDENCE

Most obviously, the prosecutor's questions about Nicoll's habit of failing to appear in court, general character for criminality, and its attempt to link these traits to this case was violative of MRE 404(a). The Michigan Rules of Evidence largely prohibit character evidence outside of limited, well-defined exceptions. See MRE 404(a). Many of the cases addressing prohibitions against character evidence do so in the context of MRE 404(b), presumably because few cases involve the prosecution eliciting testimony about a defendant's general criminal character or general predisposition to disobey lawful orders. See, e.g., *Denson*, 500 Mich at 385; *People v Thurmond*, ___ Mich App ___, ____; ___ NW3d ___ (2023) (Docket No. 361302); slip op at 4-7. The guiding principles of our 404(b) analysis apply equally, if not more so, to MRE 404(a). Like MRE 404(b), the prohibitions in MRE 404(a) "reflect[] the fear that a jury will convict a defendant on the basis of his or her allegedly bad character rather than because he or she is guilty beyond a reasonable doubt of the crimes charged." *Denson*, 500 Mich at 397, citing *People v Crawford*, 458 Mich 376, 384; 582 NW2d 785 (1998).

This fear of conviction based on character, rather than high-confidence evidence, is embodied in this case. On appeal, the prosecution concedes that the following exchange was improper:

> *Q.* So he doesn't appear in court when he's supposed to?
>
> *A.* Correct.
>
> *Q.* This type of activity, is this the type of activity—and you know [Nicoll]—why you called into dispatch when you saw him in the first place?
>
> *A.* Correct.
>
> *Q.* So that's what . . . Gary Nicoll does; isn't it?
>
> *A.* That's what the warrants for were for.
>
> *Q.* He's a criminal. He doesn't show up for court; is that correct?
>
> *A.* Correct.

We agree that this exchange was improper. The questions, "He's a criminal[?]" and "He doesn't show up for court; is that correct?" elicited character evidence. See MRE 404(a). They do not

correspond to a specific instance of bad conduct; rather, the questions illustrate Nicoll's general character for criminality and noncompliance with court orders. Compare MRE 404(b) with MRE 404(a). The egregiousness of these two questions almost overshadows the troubling nature of the questions leading to it. By asking if "[t]his type of activity"—i.e., his habit of not appearing in court when he is supposed to—was "why [the officers] called into dispatch" when they saw him, the prosecutor deftly linked his character to the facts of this case.

This would be prejudicial and undermine our confidence in almost any case, but the concerns are amplified because of the nature of the charges. Each of Nicoll's three charges involve noncompliance with a valid or lawful order. This means the jury could rely not only on evidence of his general criminality, but also on the specific evidence of his character for not complying with orders. This bears directly on elements the jury had to consider.

In *Denson*, our Supreme Court found reversible error when the prosecution introduced similar evidence. See *Denson*, 500 Mich at 392-395, 409-413. There, to rebut a self-defense claim at a trial on assault with intent to do great bodily harm, MCL 750.84, the prosecution introduced properly-noticed evidence of a prior conviction of assault with intent to do great bodily harm in an unrelated incident. See *id.* at 392. The defense argued it was irrelevant, unfairly prejudicial, and propensity evidence in disguise. *Id.* at 392-393. The prosecution argued that it did not offer the conviction as propensity evidence, but rather to rebut the self-defense claim. *Id.* at 393. The prosecution elicited evidence of the other conviction through several witnesses, but then suggested to the defendant "You have a bad temper, don't you?" and asked him whether the beating in the present case got the "rage out of your system, because you are a bully . . ., aren't you? Yes or no?" *Id.* at 393. In closing, the prosecution again described him as a "bully" and argued that he lost control in the present case, just like he did before. *Id.* at 394. Though analyzing the admissibility through the lens of MRE 404(b), our Supreme Court found the statements to be purely propensity evidence without logical relevance. *Id.* at 398-409.

Here, like *Denson*, the prosecution presented propensity evidence. Unlike *Denson*, the evidence elicited through this specific line of questioning crossed from other-acts evidence to general character evidence implicating 404(a). Though this evidence likely also violated MRE 402, MRE 403, and MRE 404(b), the MRE 404(a) violation was obvious, and trial counsel was deficient for failing to object to it.

3. THE PROSECUTION INTRODUCED IMPERMISSIBLE OTHER-ACTS EVIDENCE

While MRE 404(a) generally prohibits character evidence, MRE 404(b) prohibits evidence of specific other bad acts "to prove character in order to show that on a particular occasion the person acted in accordance with the character." MRE 404(b)(1). The prosecution's questions regarding the underlying bases for the warrants at issue in this case, questions about an unrelated domestic violence incident and its aggravated nature, and the exchange previously addressed, above all, violated MRE 404(b) for want of a proper purpose, proper notice, logical relevance, and risk of prejudice.

MRE 404(b) provides:

(b) Other Crimes, Wrongs or Acts.

(1) Prohibited Uses. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses. If it is material, the evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, absence of mistake, or lack of accident.[4]

In criminal cases, the prosecutor must "provide notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it[.]" MRE 404(b)(3)(A). The notice must articulate the permitted purpose, and absent good cause, must be submitted in writing at least 14 days before trial. See MRE 404(b)(3)(B), (C).

Our Supreme Court has observed that "[t]he first sentence of [MRE 404(b)] represents the deeply rooted and unwavering principle that other-acts evidence is inadmissible for propensity purposes." *Denson*, 500 Mich at 297 (citations omitted). "Far from 'a mere technicality,' this prohibition 'gives meaning to the central precept of our system of criminal justice, the presumption of innocence.' " *Id.*, quoting *Crawford*, 458 Mich at 383-384. As stated, this rule stems from the fear that juries will convict on the basis of bad character, rather than high-confidence evidence of the crimes charged. See *Denson*, 500 Mich at 297 (acknowledging the risk that bad acts evidence "can weigh too much with the jury" and "overpersuade them" to prejudge a defendant with bad character). MRE 404(b) provides that other-acts evidence may be admissible for non-propensity purposes. See *id*. at 398. See also MRE 404(b)(2).

In *People v VanderVliet*, our Supreme Court synthesized the standard for admitting other-acts evidence:

First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993).]

With the exception of a redacted version of the warrants and the fact that one deputy already knew Nicoll, each piece of evidence Nicoll identifies fails each part of *VanderVliet*: proper purpose, logical relevance, and 403 analysis. To be clear, the warrants, or a redacted version of them, bear directly on the lawfulness of Nicoll's arrest and the officers' orders, so they are admissible.[5] The

---

[4] The Michigan Rules of Evidence were amended effective January 1, 2024. Though the organization of MRE 404 changed, the substance remains largely unchanged.

[5] We acknowledge that the record is unclear on whether dispatch informed the deputies of the felony warrant, the domestic violence warrant, or both. Part of the record suggests that the deputies only later learned that there was an outstanding warrant for failure to appear on the domestic

fact that one deputy knew Nicoll, without saying how he knew him, bears on identification, and is also admissible.[6]

First, the prosecution failed to identify a proper purpose for the introduction of the underlying bases for the warrants, testimony emphasizing the aggravated nature of the domestic violence, prior failures to appear at court, or Nicoll's general criminal character. The first prong of the *VanderVliet* test asks "whether the prosecution has articulated a proper noncharacter purpose for admission of the other-acts evidence." *Denson*, 500 Mich at 398, citing *Crawford*, 458 Mich at 385-386. "The prosecution bears the burden of establishing that purpose." *Denson*, 400 Mich at 398. "MRE 404(b) prohibits the admission of other-acts evidence when the prosecution's only theory of relevance is that the other act *demonstrates the defendant's inclination for wrongdoing in general* and thus indicates that the defendant committed the conduct in question." *Denson*, 500 Mich at 398-399 (emphasis added), citing *People v Starr*, 457 Mich 490, 496; 577 NW2d 673 (1998); *VanderVliet*, 444 Mich at 63.

Here, as with trial court, the prosecution does not offer a proper purpose; rather, it argues the underlying bases for the warrant, the details of the domestic violence, and Nicoll's habit of failing to appear in court, are res gestae evidence, which is to say evidence that is intrinsic to the charge of fleeing and eluding and resisting and obstructing. This argument fails for two reasons. First, there is no "res gestae exception" to MRE 404(b). *People v Jackson*, 498 Mich 246, 264-276; 869 NW2d 253 (2015). Second, to the extent the prosecution argues that the underlying bases of the warrants (i.e., failing to appear in a domestic violence case and contempt for failing to appear in a breaking-and-entering case), the specifics of the domestic violence allegations, and Nicoll's habit of failing to appear in court, are the "conduct at issue" in this case, see *id.* at 269-271, citing *People v Delgado*, 404 Mich 76; 273 NW2d 395 (1978) and *People v Sholl*, 453 Mich 730; 556 NW2d 851 (1996), it is wrong. As stated, the existence of the warrants may be part of the conduct at issue. But as the trial court correctly concluded before trial, the underlying bases for the warrants is not. The fact of the warrants, or rather the deputies' knowledge of the warrants, bear on whether the initial pursuit and attempted arrest were lawful. It does matter that the warrant was for domestic violence, breaking and entering, failure to appear, or contempt. If the warrant were for murder, or torture, or criminal sexual conduct, it likewise would not matter. The prosecution's inability to identify a proper purpose and emphasis of Nicoll's history of noncompliance with court orders, through the failures to appear, suggest that it offered the evidence only to establish propensity. In other words, this evidence illustrated, as the prosecution suggested, that "this is what Gary Nicoll does."

---

violence case. If that was the case, the later-discovered warrant would not be relevant to the lawfulness of the arrest or any other material fact in the case.

[6] In his brief, Nicoll incorrectly states that a deputy testified that he knew him from an arrest on an unrelated domestic violence case. The transcript indicates that the deputy testified that he knew Nicoll from "previous contacts." A portion of the prosecutor's follow-up question was inaudible, but they appeared to then ask about the domestic violence warrant unrelated to the deputy's familiarity with Nicoll.

Relatedly, the evidence fails the second prong of the *VanderVliet* test: logical relevance under MRE 401 and MRE 402. See *Denson*, 500 Mich at 400-401. "Other-acts evidence is logically relevant if two components are present: materiality and probative value." *Id.* at 401. "Materiality is the requirement that the other-acts evidence be related to any fact that is of consequence to the action." *Id.* (quotation marks omitted). "In other words, is the fact to be proven truly in issue?" *Crawford*, 458 Mich at 388. Was the difference between aggravated and ordinary domestic assault at issue? Was it at issue whether the bases for the warrant were failure to appear, or contempt, or domestic violence, or breaking and entering with unlawful intent? The short answer is *no*. Whether "this is what Gary Nicoll does," his habit of noncompliance with court orders, or his general criminality was also not at issue. The lawfulness of the arrest was at issue, so the warrants, or a redacted version of the warrants were material. But to be clear, testimony that the deputy was informed of the existence of an outstanding warrant, would have satisfied this. The reality is the evidence Nicoll points to on appeal was not material. See *Denson*, 500 Mich at 401. We need not address whether it was probative. See *id.*

Because the bases of the warrants (i.e., allegations of failure to appear, contempt, domestic violence, and breaking and entering), specifics of the domestic violence allegations, and Nicoll's habit for failing to appear lacked logical relevance to this case, and because the prosecution failed to offer a proper nonpropensity purpose for introducing this evidence, it was inadmissible under MRE 404(b). We need not address whether such evidence satisfied the third or fourth prong of *VanderVliet*: analysis under MRE 403 and a limiting instruction. See *Denson*, 500 Mich at 409, n 13. We simply note that because there was no objection, there was no limiting instruction, see *VanderVliet*, 444 Mich at 55, so the jury likely did not know it could not consider this evidence.

Because the aforementioned evidence violated MRE 404(a) and MRE 404(b), trial counsel was deficient for failing to object. Such an objection would have, or should have, been sustained. We again discern no strategic reason for allowing the prosecution to introduce bald evidence of criminal character, habit of noncompliance with court orders, and the details of warrants whose existence led to the initial pursuit.

## B. PREJUDICE

We now consider the second prong of the *Strickland* test: whether trial counsel's deficiency prejudiced Nicoll. See *Strickland*, 466 US at 691. Once a defendant demonstrates that trial counsel's performance was deficient, he must also show "that the deficient performance prejudiced the defense." *People v Hoag*, 460 Mich 1, 5; 594 NW2d 57 (1999). "In attempting to persuade a reviewing court that counsel was ineffective, a defendant must also . . . establish a 'reasonable probability that, but for counsel's unprofessional errors, the result would have been different.' " *Id.* at 6, quoting *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018), quoting *Strickland*, 466 US at 694.

As stated, had trial counsel objected to the evidence, the trial court would have, or should have, sustained the objection. In *Denson*, our Supreme Court analyzed whether evidence introduced in violation of MRE 404(b) was harmless error, which is to say, whether it was more likely than not that the error affected the outcome. See *Denson*, 500 Mich at 409-413. Though a

different test than *Strickland*'s prejudice prong, the analysis in *Denson* illuminates the issue in this case. Regarding the impact of impermissible propensity evidence, the Court stated:

> We have noted that other-acts evidence carries with it a high risk of confusion and misuse. *Crawford*, 458 Mich at 398. When a "defendant's subjective character [is used] as proof of conduct on a particular occasion, there is a substantial danger that the jury will overestimate the probative value of the evidence." *People v Engelman*, 434 Mich 204, 213 n 16; 453 NW2d 656 (1990), quoting Imwinkelried, Uncharged Misconduct Evidence, § 2:18, pp 48-49. The risk is severe that the jury "will use the evidence precisely for the purpose that it may not be considered, that is, as suggesting that the defendant is a bad person, a convicted criminal, and that if he 'did it before he probably did it again.' " *Crawford*, 458 Mich at 398. [*Denson*, 500 Mich at 410.]

It further observed that "other crimes evidence is strong medicine for juries." *Id*. (citation omitted). Relying on these principles, our Supreme Court concluded that the prosecution's questions and arguments painting the defendant as a "bully" who lost control, convinced the Court that "the jury could not escape the impermissible inference invited by [the] evidence and that the prejudice defendant suffered as a result was severe enough to entitle him to relief." *Id.* at 411-412.

If this is true of impermissible other-acts evidence, how then do we measure the prejudice associated with impermissible character evidence? Put differently, how do we measure the prejudice associated with the prosecution's invitation to the jury to conclude that, in the prosecution's words, "[T]his is what . . . Gary Nicoll does," or conclude that he is a "criminal" who commits crimes? We conclude that the prosecution's invitation for the jury to decide this case based on Nicoll's character and past conduct, left uncorrected by defense counsel and the trial court, was sufficient to undermine our confidence in the outcome. At trial, the defense was that there may be reason to doubt that Nicoll was driving the vehicle before it reached his property. The introduction of impermissible evidence of Nicoll's criminal character, habit of not complying with lawful orders, and other-acts evidence rendered an otherwise flimsy but passable defense effectively nonexistent.

The deficiency in failing to object to this evidence necessarily affected the outcome. We therefore vacate Nicoll's conviction and remand for a new trial.

Because our handling of Nicoll's ineffective-assistance-of-counsel claim resolves this appeal, we need not address his remaining claims, including his claim of instructional error related to the trial court's failure to instruct the jury on the elements of second-degree fleeing and eluding in its final instructions. See *People v Duncan*, 462 Mich 47, 48, 51-55; 610 NW2d 551 (2000) (holding that it is structural error when a trial court completely fails to instruct the jury on the elements of a charge). See also *People v Traver*, 502 Mich 23, 28; 917 NW2d 260 (2018) (holding that our court rules require oral instruction; written instructions are insufficient). We nonetheless acknowledge that the trial court's failure to provide final instruction on one of the charges compounds the prejudice and further undermines our confidence in the conviction. Cf. *Duncan*, 462 Mich at 51-55. As stated, the risk of character evidence and propensity evidence is that a jury will convict on the basis of a defendant's bad character or history, rather than proof of the elements of the charge. See *Denson*, 500 Mich at 410-412. Here, where there is both inadmissible character

evidence and a failure to instruct the jury of the elements in the final charge, that risk is further amplified. This further supports our conclusion that trial counsel's deficiency resulted in prejudice.

## III. CONCLUSION

For the reasons stated above, we vacate Nicoll's conviction and remand for a new trial. The trial court and lawyers should take caution to ensure that the jury is instructed on the elements of all of the charges. The prosecution shall refrain from introducing improper character evidence in violation of MRE 404(a). To the extent the prosecution intends to introduce evidence of other acts, including the underlying bases for the warrant, it shall comply with MRE 404(b), including the notice requirement, and the trial court shall specify on the record whether and why such acts are admissible under *VanderVliet*. We vacate the convictions and remand for a new trial. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Adrienne N. Young

-14-